18 F.3d 1362
 28 Fed.R.Serv.3d 38
 Ray A. JOHNSON and R.J. Industries, Incorporated,
Plaintiffs-Counterclaim Defendants,
v.
A.W. CHESTERTON COMPANY, Defendant-Counterclaim
Plaintiff-Third-Party Plaintiff-Counterclaim
Defendant-Third-Party
Defendant-Appellee, Cross-Appellant,
v.
Russell HITCHCOCK, Third-Party Defendant-Counterclaimant,
and
Hitchcock International, Limited and Robert C. Hitchcock
Company, Incorporated, Third-Party Plaintiffs.
Appeal of Paul A. PIASKOSKI, Appellant-Cross-Appellee.
 Nos. 93-1628, 93-1661.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 28, 1993.
Decided March 2, 1994.
 
 1
 Paul A. Piaskoski, Anthony A. Coletti, Piaskoski & Associates, Milwaukee, WI, for Ray Johnson and R.J. Industries, Inc.
 
 
 2
 Paul A. Piaskoski, Piaskoski & Associates, Milwaukee, WI, for Hitchcock Intern., Ltd., Robert C. Hitchcock Co., Inc. and Russell Hitchcock.
 
 
 3
 Thomas L. Shriner, Jr., James L. Huston (argued), Foley & Lardner, Milwaukee, WI, for A.W. Chesterton Co.
 
 
 4
 W. Stuart Parsons (argued), Quarles & Brady, Anthony A. Coletti, Paul A. Piaskoski, Piaskoski & Associates, Milwaukee, WI, for Paul A. Piaskoski.
 
 
 5
 Before COFFEY and MANION, Circuit Judges, and SKINNER, District Judge.*
 
 
 6
 SKINNER, District Judge.
 
 
 7
 These are cross appeals from the imposition of a sanction against Paul A. Piaskoski ("Piaskoski"), attorney for the Johnson and Hitchcock interests, in favor of A.W. Chesterton Company ("the defendant"), under Fed.R.Civ.P. 11. Piaskoski asserts that it was error to impose the sanction. The defendant counters that it was an abuse of discretion for the district judge to impose only 20% of the attorney's fees incurred by it in defense of allegedly unwarranted claims. We affirm the imposition of a sanction and remand for further consideration of the amount.
 
 
 8
 The case itself arose out of the deteriorating relationship between the defendant, a manufacturer of fluid sealing devices for industrial purposes, and R.J. Industries, Inc. ("RJI"), the Wisconsin distributor of the defendant's products. Ray A. Johnson was the principal stockholder and chief executive officer of RJI. In August of 1985, the defendant notified RJI that it would terminate the distributorship because RJI was substantially delinquent in its accounts. On September 11, 1985, during the pre-termination grace period required by Wisconsin law, RJI and the defendant negotiated a salvage program calling for the payment of interest due on the RJI account and the guarantee of payment for RJI's future purchases by Russell Hitchcock, the third-party defendant, counterclaimant, and one of the third-party plaintiffs in this action. In return for agreeing to bail out RJI, Hitchcock received a one-year option to purchase 51% of RJI's stock for one dollar per share, or $510.
 
 
 9
 On or about November 4, 1985, Hitchcock learned of a comment made by a man named Congdon, one of the defendant's employees, to the effect that Johnson was improperly siphoning money out of RJI. On November 6, 1985, Hitchcock notified the defendant that he was rescinding the agreement of September 11, alleging that the defendant was in default by changing "certain terms and conditions" of the agreement. Hitchcock's letter contained a postscript, however, stating that "[h]opefully future negotiations will allow us to resolve our mutual differences." Upon receipt of this notice, the defendant put a hold on RJI's account, and refused to extend further credit for purchase of defendant's equipment. Hitchcock's brother, Robert, who was acting as sales manager of RJI, then asked the defendant to restore RJI's credit status. The defendant did restore RJI's credit status, apparently in the belief that Hitchcock was withdrawing his rescission of the September 11 agreement, and RJI continued to distribute the defendant's products until February 1986. Meanwhile, at a meeting in late November 1985, Congdon repeated his remarks concerning Johnson and the unaccounted for funds of RJI.
 
 
 10
 In early February 1986, Robert Hitchcock advised the defendant that Russell Hitchcock did not consider himself bound to guarantee RJI's debts to the defendant, and further, that neither he nor his brother had invested any money in RJI and did not intend to invest in RJI in the future. The defendant then terminated RJI's dealership on February 6, 1986, and on February 11, RJI and the defendant executed an agreement terminating the dealership.
 
 Proceedings in the District Court
 
 11
 On April 21, 1987, RJI and Johnson, represented by an attorney other than Piaskoski, filed an action in Wisconsin state court, alleging violation of the Wisconsin Fair Dealership Law, defamation and tortious interference with business contracts. The defendant removed the case to the United States District Court for the Eastern District of Wisconsin.
 
 
 12
 The defendant filed an answer, a counterclaim for money owed on RJI's account and a third-party claim against Russell Hitchcock based upon his guarantee of RJI's indebtedness. At this point Piaskoski entered the case on behalf of Hitchcock, filing an answer to the third-party claim and a further counterclaim against the defendant for tortious interference, paralleling RJI's claim.
 
 
 13
 On April 29, 1988, Piaskoski undertook the representation of RJI and Johnson, as well as Russell Hitchcock, replacing prior counsel. On August 1, 1988, Piaskoski filed an amended complaint on behalf of these parties, which asserted the following claims against the defendant:
 
 
 14
 1. A claim by RJI that the defendant had wrongfully terminated the dealership in violation of the Wisconsin Fair Dealership Law;
 
 
 15
 2. A claim by Johnson for defamation;
 
 
 16
 3. Claims by Johnson, RJI, Russell Hitchcock, and two Hitchcock corporations, Hitchcock International, Limited and Robert C. Hitchcock Company, Incorporated, for tortious interference with the contractual relationship between RJI and Hitchcock;
 
 
 17
 4. A claim by Russell Hitchcock that the defendant had fraudulently induced Hitchcock to invest in RJI, by making promises without any intention of keeping them.
 
 
 18
 On the defendant's motion, summary judgment for the defendant was entered by the court on all of these claims.
 
 
 19
 The defendant thereupon moved for sanctions against Piaskoski under Fed.R.Civ.P. 11 for filing claims not well grounded in law and fact. The court allowed the motion and imposed a sanction in the amount of $10,778.19, notwithstanding the defendant's representation that it had incurred expenses and attorney's fees in the amount of $53,890.93 to defend against these claims.
 
 Imposition of a Sanction
 
 20
 The imposition of sanctions under Rule 11 by a district court is reviewable on appeal only for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2060-61, 110 L.Ed.2d 359 (1990). Rule 11, as amended in 1983, and prior to the recent overhaul effective December 1, 1993, contained the following provisions applicable to this case:
 
 
 21
 Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 22
 "It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court...." Cooter & Gell, 496 U.S. at 393, 110 S.Ct. at 2454. The Note of the Advisory Committee on Civil Rules points out, however, that while the purpose of the rule is to lessen frivolous claims and defenses, it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Advisory Committee Note, 97 F.R.D. 165, 199 (1983). See also Brown v. Federation of State Medical Boards of U.S., 830 F.2d 1429, 1437 (7th Cir.1987).
 
 
 23
 Piaskoski's claim that the defendant had violated the Wisconsin Fair Dealership Law was barred by the applicable statute of limitations, which he now admits, and which the court rightly found could have been easily discovered, certainly by the time that Piaskoski filed the amended complaint. Piaskoski conceded before the district court that the fraud claim was without foundation, and based only on Hitchcock's surmise that since the defendant changed certain credit terms, it never intended to abide by the salvage agreement. Abandonment or withdrawal of the claim does not avoid the imposition of sanctions. Cooter & Gell, 496 U.S. at 398, 110 S.Ct. at 2457.
 
 
 24
 Piaskoski brought claims on behalf of two corporations which had absolutely nothing to do with the transactions between RJI, the defendant and Russell Hitchcock. Piaskoski argues that Hitchcock said at one time that he might transfer his interest in RJI to one of the corporations which he controlled, and that Piaskoski added the corporations as third-party plaintiffs out of an abundance of caution. This is unpersuasive.
 
 
 25
 The claim that Piaskoski apparently relied on most heavily, that the defendant had tortiously interfered with the contractual arrangements between RJI and Russell Hitchcock, was based entirely on a marginal note on one of the defendant's internal memoranda. The marginal note was written by a vice-president of the defendant named Walsh, apparently on January 6, 1986, many weeks after the comments by Congdon which are alleged to be the acts of interference. The entire text of the note, scrawled in the margin of an internal memorandum detailing some of the defendant's problems with the distributorship, is as follows:
 
 
 26
 MAC: JUST AN OPINION SINCE I HAVE CALLED UPON ALL THE PARTIES INVOLVED. GET PART OR ALL THE OWED $100,000, THEN CANCEL & GO DIRECT. AS ED/BOB STATE--THE HITCHCOCKS ARE SPREAD TOO THIN TO DRIVE SEAL PROD. [the former name of RJI] TO LARGE SALES.
 
 
 27
 From this scrap, and from the evident skepticism that the defendant expressed about the ability of Hitchcock and Johnson to keep RJI in business, Piaskoski constructs an imaginative scenario that the defendant wished RJI to fail so that it could terminate RJI without liability and sell its products directly, and intended to insure this result by driving Hitchcock away; and furthermore that this intention had been formed back in November of 1985. The district court characterized this scenario as "absurd" in view of the fact that the defendant obviously depended on Hitchcock to repay the outstanding debt of RJI; it would have been contrary to defendant's interest to drive Hitchcock away. While we might be reluctant to characterize Piaskoski's scenario as "absurd," we have no hesitation in ruling that it falls far short of being "well grounded in fact" as required by Rule 11.
 
 
 28
 Johnson's claim of defamation was barred by the Illinois statute of limitations as incorporated by Wisconsin's borrowing statute, Wis.Stat. Sec. 893.07(1). Piaskoski now argues to us that there was republication of the defamatory statement in Wisconsin, and that another statute of limitations should apply. This argument was not developed before the district judge, however, and even now Piaskoski fails to tell us what statute of limitations should apply, or what its terms might be.
 
 
 29
 As we said in our comprehensive discussion of Rule 11 in Mars Steel Corporation v. Continental Bank N.A., 880 F.2d 928, 932 (7th Cir.1989), one of the purposes of the rule is to place the burden of reasonable investigation on the proponent of a proposition, rather than on the opponent. Piaskoski's suggestion on page 22 of his brief to us that his tortious interference claim would have been good if he could have gotten an admission from one of the defendant's employees makes it clear that this litigation was instigated as a gamble that something might come of it rather than on the basis of the facts at hand. It was precisely this reckless willingness to impose the burden of unwarranted litigation upon others which Rule 11 was designed to prevent. The district court concluded that Piaskoski's claims would not have been prosecuted if he had made a reasonably diligent investigation of the law and of the evidence. We are satisfied that this does not constitute abuse of discretion; in fact, quite the contrary. Accordingly we affirm the imposition of a sanction in some amount against Piaskoski.
 
 The Amount of the Sanction
 
 30
 Like all other aspects of a Rule 11 determination, the amount or form of the sanction is reviewable only for abuse of discretion. Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2460-61. The defendant concedes that it has no entitlement to its fees or any other particular form of sanction, but nevertheless argues that it was an abuse of discretion to award less than its fees in this case. We disagree with so broadly stated a proposition. As we have said, the purpose of the rule is to deter baseless filings; Rule 11 is not a fee-shifting statute. Mars Steel, 880 F.2d at 932. "[T]he Rule calls only for 'an appropriate sanction'--attorney's fees are not mandated." Business Guides v. Chromatic Comm. Enterprises, 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). See also Cooter & Gell, 496 U.S. at 409, 110 S.Ct. at 2462.
 
 
 31
 While an award of the injured party's attorney's fees may well be the norm, and satisfies the compensatory purpose of Rule 11 to ensure "that the proponent of a position incurs the costs of investigating the facts and the law," Mars Steel, 880 F.2d at 932, it is also true that the deterrent purpose of the rule should be served by "impos[ing] a sanction that fits the inappropriate conduct." Brown, 830 F.2d at 1439. "Thus, the basic principle underlying Rule 11 is that '[i]n choosing a sanction ... "the least severe sanction [that is] adequate to serve the purpose should be imposed." ' " Id. at 1437 (quoting Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987)). The test is one of reasonableness. Cf. Navarro-Ayala v. Nunez, 968 F.2d 1421, 1426-27 (1st Cir.1992).
 
 
 32
 One equitable consideration is the ability of the sanctioned attorney (or party) to pay an award of the other party's attorney's fees. Brown, 830 F.2d at 1439; Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195-96 (3d Cir.1988) (collecting cases). One can easily envisage a situation in which a sanction of $50,000 would devastate a sole practitioner but would be only petty cash of minimal deterrent effect with respect to a giant law firm. That would not necessarily be the case, however, and the relative size of the law firms involved is not of itself determinative. The burden is on the sanctioned party to show that he was unable to pay a reasonable award. Dodd Ins. Services v. Royal Ins. Co. of Am., 935 F.2d 1152, 1160 (10th Cir.1991). In this case, Piaskoski did not make any representation or offer any evidence of his ability to respond to an otherwise appropriate sanction. The court made the following determination sua sponte:
 
 
 33
 Although the court finds that sanctions are appropriate, because of the nature of the proceedings and the vast discrepancy between the size of the law firms and quality and quantity of resources available to each, the court will not permit [the defendant] to recover the entire amount requested. To order Mr. Piaskoski to pay $53,890.93 in light of these circumstances would be unfair.
 
 
 34
 We have made it abundantly clear that a district court must articulate its factual basis for the amount of its sanctions imposed under Rule 11. Brown, 830 F.2d at 1439.
 
 
 35
 While we would ordinarily defer to the local knowledge and informed discretion of the district judge in determining the amount of sanctions, we are constrained to conclude that the apparently arbitrary and unsupported reduction of the requested award by 80% based solely on the discrepancy in the size of the law firms involved was an abuse of discretion. Accordingly, we remand this case to the district court for further consideration of the suitable amount of the sanction to be imposed against Piaskoski, and we leave to the district judge the determination of what additional hearings may be necessary. We emphasize that it remains within the district judge's informed discretion to select an appropriate sanction, supported by an adequate record.
 
 Order
 
 36
 The district court's determination that sanctions should be imposed on Piaskoski under Rule 11 is affirmed. The case is remanded to the district court for further consideration of the amount of the sanction. Costs shall be awarded to the defendant, A.W. Chesterton Company.
 
 
 
 *
 Hon. Walter Jay Skinner of the District of Massachusetts, sitting by designation