**Tommy LAND, Plaintiff–Appellant, Cross–Appellee,**

v.

**CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION (INDEPENDENT) HEALTH AND WELFARE FUND, Defendant–Appellee, Cross–Appellant.**

Nos. 93–2454 & 93–2463.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1994.

Decided May 26, 1994.

**16.** *See supra* note 8.

John B. Cashion (argued), Chicago, IL, for Tommy Land.

Joseph M. Burns, David S. Allen (argued), Jacobs, Burns, Sugarman & Orlove, Chicago, IL, for Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MIHM, District Judge.*

ROVNER, Circuit Judge.

Tommy Land, a participant in the defendant self-funded, welfare-benefit plan, maintains that the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.*, is unconstitutional as applied. Land asserted two claims before the district court under a variety of constitutional theories. The court dismissed both claims pursuant to the Fund's motion but denied the Fund's request for Fed.R.Civ.P. 11 sanctions. Land now appeals the dismissal of one claim, and the Fund cross-appeals from the district court's refusal to impose sanctions. We affirm the dismissal of Land's complaint but conclude that Rule 11 required the imposition of an appropriate sanction for the pursuit of a claim under 42 U.S.C. § 1983 without an adequate pre-filing inquiry into the law. We therefore reverse the denial of sanctions and remand for the district court to enter sanctions in an appropriate amount.

## I. BACKGROUND

Although Land's complaint is not a model of clarity, we look to that pleading in reviewing the district court's dismissal order. We may consider only the well-pleaded factual allegations in the complaint and any reasonable inferences that may be drawn therefrom in determining whether Land has stated a claim under any of his legal theories. *See, e.g., Gould v. Artisoft, Inc.*, 1 F.3d 544, 546 (7th Cir.1993).

Land's first claim for relief was based on 42 U.S.C. § 1983. Land alleged that he had been involved in an automobile accident, that he had sued the other party to the accident in the Circuit Court of Cook County, Illinois, and that he had received $182,500.00 in a settlement of that suit. Land maintained that the settlement did not fully compensate for his injuries, although he conceded that a portion of the settlement was intended to cover $42,604.92 that the Fund had advanced for Land's medical expenses. The ERISA plan under which those benefits were paid obligates Land to reimburse the Fund for covered expenses if he is subsequently compensated by a third party. Land acknowledged the Fund's right to reimbursement but maintained that its recovery should be discounted to reflect the legal fees he incurred in procuring the settlement. Specifically, Land contended that under Illinois subrogation law, he would be entitled to reduce the Fund's reimbursement by one-third.[1] *See, e.g., Baier v. State Farm Ins. Co.*, 66 Ill.2d 119, 5 Ill.Dec. 572, 361 N.E.2d 1100, 1102–03 (1977). Because ERISA supersedes any and all state laws relating to covered plans, however (*see* 29 U.S.C. § 1144(a)), this Illinois doctrine is not available to Land, and the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees.

Land alleged in count I that enforcement of the plan would deprive him of a property right in violation of Article III, section 1 of the United States Constitution, the Tenth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Land maintained that because the Fund asserted an entitlement to full reimbursement under ERISA, the Fund was acting under "color of law" for purposes of section 1983. He therefore requested a declaratory judgment to the effect that the Fund was entitled only to a discounted recovery under Illinois law. Land also requested that he be permitted to recover a reasonable attorney's fee pursuant to 42 U.S.C. § 1988.

In count II, Land alleged that to the extent the Fund was seeking a complete recovery of benefits paid out under the plan, it was acting on the basis of a federal statute (ERISA) that is unconstitutional as applied. Land primarily maintained that ERISA is unconstitutional because it delegates to private welfare-benefit plans the authority to preempt state law.

The Fund immediately moved to dismiss Land's complaint and also requested the imposition of Rule 11 sanctions. The Fund

---

* The Hon. Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, sitting by designation.

1. Land's state court counsel apparently received one-third of the settlement fund.

argued that Land had not stated a claim under section 1983 because he had not alleged that the Fund had acted under color of state law. Land did not contest the Fund's assertion but instead responded that the section 1983 claim should have been brought under 42 U.S.C. § 1981. (R. 60–61.) Most of Land's response, however, addressed count II of the complaint—that ERISA as applied here constitutes an improper delegation of legislative authority to a private entity.

The district court's order of dismissal also primarily addressed the non-delegation argument. Although the district court was somewhat sympathetic to Land's predicament, it noted that his relatively simple declaratory judgment action had "led [him] down a tortuous legal path." (R. 117.) The court rejected Land's non-delegation argument, finding that "ERISA does not delegate legislative power to employee benefit plans at all." (R. 119.) The court also agreed with the Fund that Land had failed to allege any action taken under color of state law and noted that Land himself had acknowledged that his section 1983 claim had been brought in error. As for any claim under section 1981, the court could see no possible application of that statute to the facts alleged.[2] Yet the court denied the Fund's motion for Rule 11 sanctions, finding that Land's non-delegation argument was warranted by a good faith argument for the extension, modification, or reversal of existing law.[3]

**2.** The court also noted that the inapplicability of Article III, section 1 of the Constitution "speaks for itself." (R. 119 n. 2.) At oral argument, we asked Land's counsel what possible application Article III might have here, and counsel conceded that the reference to Article III was a "misstatement" and that Article III has nothing to do with his client's claim.

**3.** The court noted, however, that the same could not be said for Land's section 1983 claim or the reference in his responsive memorandum to section 1981. Yet the court declined to impose sanctions only with respect to those claims.

**4.** In defense of the district court's judgment, the Fund again argues that Land cannot show that it has acted under color of state law for purposes of section 1983. According to the Fund, we need not reach any of Land's constitutional challenges for this reason. But as we have indicated, Land is not pursuing his section 1983 claim in this appeal. Instead, he appeals only from the dis-

## II. DISCUSSION

### A.

■ Land appeals only from the dismissal of count II; he does not pursue his section 1983 claim here. We review the district court's decision to dismiss count II de novo. *Pierce v. Village of Divernon, Illinois,* 17 F.3d 1074, 1076 (7th Cir.1994).[4]

Land's constitutional challenges are precipitated by ERISA's broad preemption clause, which states that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court explained in *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990), that this clause "is conspicuous for its breadth" and that it "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *See also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).[5] The Court held in *Holliday* that by virtue of section 1144, ERISA preempted a state statute that would have nullified a plan's right to subrogation or reimbursement. 498 U.S. at 65, 111 S.Ct. at 411.[6] *Holliday* would therefore require that

missal of count II, which we interpret to seek a declaratory judgment to the effect that the entire $42,604.92 is not owed to the Fund because application of ERISA's preemption clause in these circumstances is unconstitutional. Land need not establish that the Fund acted under color of state law to pursue such a claim.

**5.** "By establishing benefit plan regulation as exclusively a federal concern, Congress minimized the need for interstate employers to administer their plans differently in each State in which they have employees." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 105, 103 S.Ct. 2890, 2904, 77 L.Ed.2d 490 (1983) (internal quotation omitted).

**6.** Although addressed to a statutory provision, *Holliday's* holding applies equally to common law subrogation principles, as the "State laws" preempted by ERISA include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C.

we reject any argument that Illinois law should apply here to reduce the amount owed the Fund (*see also Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1296 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993)), and Land does not advance such a claim. He instead takes a more creative approach, contending that ERISA, as applied in *Holliday* and therefore to the current plan, is unconstitutional because it permits private parties to formulate welfare-benefit plans that abrogate principles of state law. Land maintains that because the Secretary of Labor has failed to issue any regulations governing the content of welfare-benefit plans, the substance of those plans is left entirely to the discretion of plan administrators. This, according to Land, results in an unconstitutional delegation of congressional authority to private parties.

The non-delegation doctrine Land invokes is primarily derived from a series of Supreme Court decisions that consider whether Congress unconstitutionally delegated its legislative authority to an agency of the Executive Branch. *See, e.g., Skinner v. Mid–America Pipeline Co.,* 490 U.S. 212, 109 S.Ct. 1726, 104 L.Ed.2d 250 (1989) (delegation of authority to Secretary of Transportation to develop a system of user fees to cover the cost of administering federal pipeline safety programs); *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (delegation of power to promulgate sentencing guidelines to independent Sentencing Commission); *Lichter v. United States,* 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948) (delegation of authority to War Department to recover excessive profits on military contracts); *American Power & Light Co. v. SEC,* 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946) (delegation of authority to Securities and Exchange Commission to prevent unfair or inequitable distribution of shareholder voting power); *FPC v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944) (delegation to Federal Power Commis-

sion of authority to determine just and reasonable rates); *National Broadcasting Co. v. United States,* 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) (delegation to the Federal Communications Commission of the power to regulate broadcast licensing). The principal concern of these cases is with the separation of legislative and executive powers, and the Court has asked in each instance whether Congress has provided "an administrative agency with standards guiding its actions such that a court could 'ascertain whether the will of Congress has been obeyed.'" *Skinner,* 490 U.S. at 220, 109 S.Ct. at 1731 (quoting *Mistretta,* 488 U.S. at 379, 109 S.Ct. at 658). If it has, then "no delegation of legislative authority trenching on the principle of separation of powers has occurred." *Skinner,* 490 U.S. at 220, 109 S.Ct. at 1732.[7] In *Mistretta,* the Court noted that since 1935, it has upheld, "without deviation, Congress' ability to delegate power under broad standards." 488 U.S. at 373, 109 S.Ct. at 655.

Land does not suggest that under these cases, Congress provided insufficient guidance to the Secretary of Labor as to his role in regulating welfare-benefit plans. Instead, Land's argument is that the Secretary himself effected a delegation of legislative authority when he failed to issue any regulations governing the content of such plans. A reading of Land's brief reveals that his real argument is not with Congress, the usual target in non-delegation cases, but with the Secretary of Labor, for Land acknowledges that he would have no case if the Secretary had met his obligations and promulgated regulations under the statute. (Land Br. at 5, 16.) Land contends that in light of the lack of any regulatory guidance to plan administrators, this case is controlled by the Supreme Court's decisions in *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936), and *Eubank v. Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912),

§ 1144(c)(1); *see Ingersoll–Rand,* 498 U.S. at 138–39, 111 S.Ct. at 482–83.

**7.** *See also Mistretta,* 488 U.S. at 372, 109 S.Ct. at 655 ("So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928))).

which stand for the proposition that "a legislative body may not constitutionally delegate to private parties the power to determine the nature of rights to property in which other individuals have a property interest, without supplying standards to guide the private parties' discretion." *General Elec. Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1455 (2d Cir.1991).

This rather circuitous argument runs into a number of formidable obstacles. The primary problem is that Land's theory assumes that Congress intended the Secretary to regulate the substantive content of welfare-benefit plans. But we have indicated, as has the Supreme Court, that this was *not* Congress' intent. In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985), the Court unequivocally stated that ERISA "does not regulate the substantive content of welfare-benefit plans." *See also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983). This court similarly has observed that "Congress never intended ERISA to dictate the *content* of welfare benefit plans" and that decisions as to content are within the discretion of plan administrators. *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1393 (7th Cir.1993) (emphasis in *Hickey* ).[8] Questions relating to the level of welfare benefits that are available under a plan are resolved by reference to the written instrument that governs the plan. That instrument is in the nature of a private contract between the parties to the plan (*see Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981)), and ERISA does not purport to regulate the substantive terms of

that contract. Thus, if the Secretary had issued regulations that prescribed the substantive content of welfare-benefit plans, he would have contravened congressional intent.

■ The contractual nature of any rights provided under a welfare-benefit plan is evidenced by ERISA's vesting rules for such plans. The statute does not impose a vesting requirement on welfare-benefit plans (*Massachusetts v. Morash,* 490 U.S. 107, 119, 109 S.Ct. 1668, 1675, 104 L.Ed.2d 98 (1989)) but leaves that to the agreement of the parties. Although the statute does not require vesting, it clearly does not prevent the governing plan instrument from providing for vested benefits. *See, e.g., Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 604–05 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Ryan v. Chromalloy Am. Corp.,* 877 F.2d 598, 603 (7th Cir.1989). As we explained in *Ryan,* the statute requires that an employee benefit plan " 'be established and maintained pursuant to a written instrument' " (29 U.S.C. § 1102(a)(1)), and through that instrument, the parties remain "free to subject such welfare benefits to vesting requirements not provided by ERISA...." 877 F.2d at 603. Similarly, nothing in ERISA requires that a subrogation provision be included in a written plan, but if included, the terms of that provision would not be a matter of governmental concern. Thus, in providing for vesting requirements or other benefits under a written plan instrument, a plan administrator does not exercise any delegated legislative authority but instead exercises his private authority to determine the contractual rights that will be offered by his plan.[9]

---

8. Congress' intent in this regard is reflected both in the purpose of ERISA and in the provision authorizing the Secretary to issue regulations. ERISA's purpose is not to govern the content of welfare-benefit plans but to require the disclosure and reporting of financial and other information, to establish standards of conduct, and to provide appropriate remedies and ready access to the federal courts. 29 U.S.C. § 1001(b); *see also* 29 U.S.C. § 1001(a) ("it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [benefit] plans"). Pursuant to that legislative

purpose, the Secretary is authorized to "prescribe the format and content of" the summary plan description, the annual report, and other reports and documents that must be furnished or made available to plan participants and beneficiaries. 29 U.S.C. § 1029(c). This statutory authorization does not apply, however, to "the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated." *Id.*

9. Land also contends that ERISA violates the Equal Protection Clause in that it draws a distinction for preemption purposes between self-funded plans, which are exempt from state regu-

B.

Having rejected Land's constitutional challenge, it remains for us to consider the matter of Rule 11 sanctions. The district court denied the Fund's request for sanctions and then denied its motion for reconsideration of that denial. In its original order, the court found that Land's constitutional arguments were warranted by a good faith argument for the extension, modification, or reversal of existing law. On reconsideration, the court reiterated its belief that "taken as a whole," Land's actions did not justify a sanction. We review the denial of sanctions under Rule 11 for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Ross v. City of Waukegan*, 5 F.3d 1084, 1088 (7th Cir.1993); *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 930 (7th Cir.1989) (en banc). Although this is a deferential standard, our review " 'is not toothless.' " *LaSalle Nat'l Bank v. County of DuPage*, 10 F.3d 1333, 1337 (7th Cir.1993) (quoting *In re Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir.1992)). It must be sufficiently rigorous to ensure " 'that district judges reflect seriously, and consider fully, before imposing (or denying) sanctions.' " *LaSalle Nat'l Bank*, 10 F.3d at 1337 (quoting *Mars Steel Corp.*, 880 F.2d at 936).

Our resolution of the sanctions question initially is complicated by the December 1, 1993 amendments to Rule 11, which took effect while this appeal was pending. The old version of the rule, under which the district court denied sanctions below, provided:

... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added.) Under this version, imposition of an appropriate sanction is mandatory once the district court determines that the rule has been violated. *See, e.g., LaSalle Nat'l Bank*, 10 F.3d at 1338; *Ross*, 5 F.3d at 1088; *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir.1991). Under the amended Rule 11, however, the imposition of sanctions is within the discretion of the district court even after a violation has been identified:

**(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a

---

lation, and commercially-insured plans, which remain subject to state insurance regulations pursuant to 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has mentioned this disuniformity under ERISA on more than one occasion without suggesting that it may pose any problem under the Equal Protection Clause. *See Holliday*, 498 U.S. at 63, 64, 111 S.Ct. at 410, 411; *Metropolitan Life Ins. Co.*, 471 U.S. at 747, 105 S.Ct. at 2393; *see also Reilly v. Blue Cross and Blue Shield United*, 846 F.2d 416, 425–26 (7th Cir.) (noting disuniformity), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). Indeed, in *Holliday*, the Court explained that "[b]y recognizing a distinction between insurers of plans and the contracts of those insurers, which are subject to direct state regulation, and self-insured

employee benefit plans governed by ERISA, which are not, we observe Congress' presumed desire to reserve to the States the regulation of the 'business of insurance.' " 498 U.S. at 63, 111 S.Ct. at 410; *see also Anderson v. Humana, Inc.*, 24 F.3d 889, 892 (7th Cir.1994). In line with *Holliday*, courts have consistently adhered to this distinction in making preemption decisions under ERISA. *See, e.g., Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445, 450 (6th Cir.1993) (compiling cases). We have no doubt that this distinction bears a rational relationship to Congress' legitimate goal of preserving state regulation over the business of insurance. *See* 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.").

pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

.        .        .        .        .

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court *may*, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(Emphasis added.) [10] Which version applies here could make a difference to our decision, for under the amended rule, we might have affirmed a denial of sanctions as an appropriate exercise of the district court's discretion. *See Silva v. Witschen,* 19 F.3d 725, 729 n. 5 (1st Cir.1994); *Knipe v. Skinner,* 19 F.3d 72, 75 (2d Cir.1994) ("under the amended version, the imposition of sanctions for a Rule 11 violation is discretionary rather than mandatory"). We must therefore determine whether the amendments should apply on this appeal.

■  The amended version of Rule 11 took effect on December 1, 1993, and it governs "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." 146 F.R.D. 404 (Apr. 22, 1993) (Supreme Court order amending the Federal Rules of

Civil Procedure). Assuming without deciding that this case was "pending" on the effective date of the amended rule,[11] we find that application of the amendments here would not be "just and practicable" for purposes of the Supreme Court's order. *See Silva,* 19 F.3d at 727; *see also Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1364 (7th Cir.1994) (mentioning amendment but applying earlier version without further discussion); *Ware v. United States,* 154 F.R.D. 291, 292–93 (M.D.Fla.1994) (would not be "just and practicable" to apply new rule to long-pending litigation). Both at the time Land filed his complaint and when the Fund moved for sanctions, the old Rule 11 was in effect, and both parties presumably were operating under the standards and procedures propounded in that rule. Counsel's conduct should therefore be judged under those standards. *Knipe,* 19 F.3d at 78 (court should not charge party with knowledge of a rule that was not in effect at the time of filing); *In re Crysen/Montenay Energy Co.,* 166 B.R. 546, 552 n. 5 (S.D.N.Y.1994) (same); *Kraemer Export Corp. v. Peg Perego U.S.A., Inc.,* 1994 WL 86357, * 7–9, 1994 U.S. Dist. LEXIS 3071, *21–22 (S.D.N.Y. Mar. 17, 1994) (would not be just to apply amended rule to conduct that occurred and motions that were filed prior to amendment); *Agretti v. ANR Freight System, Inc.,* 1994 WL 46670, *1, 1994 U.S. Dist. LEXIS 1433, *2 (N.D.Ill. Feb. 7, 1994) (would not be just to apply amended rule when parties must have expected that their conduct would be judged under the rule in effect at the time). We thus consider the Fund's cross-appeal under the standards embodied in old Rule 11 and in our cases interpreting that rule.

■  We agree with the district court that Land's non-delegation argument, which we have addressed above, was warranted by a good faith argument for the extension, modification, or reversal of existing law and that

---

**10.** The amended rule also differs from its predecessor in that it requires arguments "for the extension, modification, or reversal of existing law" to be "nonfrivolous," rather than made in "good faith." *See Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994).

**11.** *See Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990) ("an amendment to the law while a case was pending should be applied by the appellate court only if, 'by its terms,' the law was to be applied to pending cases").

it therefore was not sanctionable under Rule 11. Yet as the district court observed, the same cannot be said for Land's claim under 42 U.S.C. § 1983, which alleged that the Fund had acted under "color of law" when it relied on ERISA's preemption provision to assert an entitlement to the entire $42,604.92. (R. 11.) As the lower court indicated, that argument has no legal basis because it would mean that any private actor who relies on a *federal* statute acts under color of *state* law for section 1983 purposes. Land's counsel has never provided any authority for this rather remarkable proposition, and it is directly contradicted by our cases. *See, e.g., Edgar v. Inland Steel Co.,* 744 F.2d 1276, 1278 (7th Cir.1984) ("At best, defendant acted under color of federal law when it complied with the IRS instructions; but section 1983 does not protect against such acts"); *Hubbert v. United States Parole Comm'n,* 585 F.2d 857, 858 (7th Cir.1978); *Askew v. Bloemker,* 548 F.2d 673, 677 (7th Cir.1976) ("No claim lies, however, for actions taken under color of federal law"). Although the district court appropriately found that Land's section 1983 claim had no basis in law, it declined to take the additional step of imposing an appropriate sanction under the rule, finding that on the whole, Land's actions did not justify a sanction. But because we agree with the district court that Land's section 1983 claim was not warranted by a good faith argument for the extension, modification, or reversal of existing law, we think the rule required the imposition of an appropriate sanction as to that claim. The district court therefore abused its discretion in denying such a sanction.

We are mindful that we must apply Rule 11 so as not to " 'chill an attorney's enthusiasm or creativity' " in pursuing new and unusual legal theories. *LaSalle Nat'l Bank,* 10 F.3d at 1338 (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1378 (4th Cir. 1991)). But there is no indication here that Land's counsel was making a good faith argument for the extension, modification, or

reversal of existing law relating to section 1983's "under color of state law" requirement. Indeed, Land's counsel readily admitted in response to the Fund's motion to dismiss that the section 1983 claim was groundless. Yet counsel then compounded his error by contending that the claim instead fell under 42 U.S.C. § 1981. (*See* R. 60–61; *see also* Land Reply Br. at 22 ("The reference to section 1983 instead of section 1981 was inadvertent and harmless").) Land never amended his complaint to assert a claim under section 1981, but as the district court explained, such an endeavor would have been hopeless, as that section prohibits racial discrimination in the making and enforcement of contracts and would have no application here. (*See* R. 12.) Indeed, we witnessed firsthand the shifting sands of Land's case at oral argument, when Land's counsel conceded, after questioning from the bench, that his reference in the complaint to a violation of Article III, section 1 of the Constitution was a "misstatement" and that Article III has nothing to do with this case.[12]

We fear that, at least with respect to the section 1983 claim, counsel's strategy may have been to allege as many theories as possible and to force the Fund and the courts to sort them out. We have held before that the party advancing a legal theory has the burden of conducting a reasonable investigation of its viability before forcing an opponent to defend the claim. *See, e.g., Johnson,* 18 F.3d at 1366; *City of East St. Louis v. Circuit Court for the Twentieth Judicial Circuit,* 986 F.2d 1142, 1145 (7th Cir.1993); *Smith v. Nat'l Health Care Servs.,* 934 F.2d 95, 96 (7th Cir.1991); *Mars Steel Corp.,* 880 F.2d at 932 ("Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation"). As we recently reiterated in *Burda v. M. Ecker Co.,* 2 F.3d 769, 775 (7th Cir.1993):

"Rule 11 requires counsel to study the law before representing its contents to a

---

12. Article III, section 1 provides:
The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both

of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

federal court.... The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.... The point ... is that every lawyer must do the necessary work to find the law *before* filing the [complaint]. It is not acceptable to make an assertion of law and hope that it will turn out to be true."

(quoting *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986) (emphasis in *Thornton* )). A reasonable investigation here would have revealed that Land had no legal basis for asserting a claim against the Fund under section 1983. That claim was not made in good faith in order to extend, modify, or reverse existing law because Land simply advanced no argument to that effect. Instead, he readily abandoned the section 1983 claim as a mistake once the Fund had conducted his legal investigation for him. *See Smith,* 934 F.2d at 97 ("In order to determine whether the complaint is an effort to change law rather than a refusal to acknowledge adverse precedent, a court must examine later arguments by counsel in support of the complaint"); *see also Thompson,* 940 F.2d at 198; *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1082 (7th Cir. 1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).[13]

Because we find that Rule 11 was violated (as the district court apparently did as well), the imposition of an appropriate sanction was required. *LaSalle Nat'l Bank,* 10 F.3d at 1338; *Ross,* 5 F.3d at 1088. The sanction here, however, should not exceed those expenses incurred in relation to the Fund's motion to dismiss the section 1983 claim and memorandum in support thereof, as Land abandoned the claim in response to the Fund's motion and has not pursued it on appeal. We leave the calculation of an appropriate sanction to the district court on remand.[14]

## III. CONCLUSION

The district court's judgment dismissing count II of Land's complaint is affirmed. The court's denial of the Fund's motion for Rule 11 sanctions is reversed, and the case is remanded with instructions that the court enter an appropriate sanction for pursuit of a claim under 42 U.S.C. § 1983 in violation of the rule. The Fund shall recover its costs on this appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

13. Moreover, Land did not abandon the claim until after the Fund had filed its motion and supporting memorandum, although the Fund had notified Land's counsel by letter of the many authorities adverse to his position before filing its motion. (R. 39–41.) Plaintiff's counsel apparently took no action in response to that letter and never attempted to distinguish or to seek a modification or reversal of the Fund's case authority.

14. Because Land has not pursued the section 1983 claim here, we do not believe that sanctions are warranted under Fed.R.App.P. 38 for the pursuit of a frivolous appeal. The Fund's request for Rule 38 sanctions is accordingly denied.