35 F.3d 568
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joseph J. GIOIOSO and Joseph V. GIOIOSO, Plaintiffs-Appellants,
v.
DIOCESE OF LA CROSSE, INCORPORATED, Bishop F.W. Freking, and
Catholic Charities, Incorporated (Diocese of La
Crosse), Defendants-Appellees.
 No. 94-1034.
 United States Court of Appeals, Seventh Circuit.
 Argued May 20, 1994.
Decided Sept. 13, 1994.
 
 Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 In July 1981, Joseph V. Gioioso ("Gioioso, Sr.") placed his son, Joseph J. Gioioso ("Gioioso, Jr.") in the St. Michael's Home for Children ("St. Michael's"), a residence for children with psychological and behavioral problems located in La Crosse, Wisconsin, and owned and operated by defendant Catholic Charities, Incorporated. Gioioso Jr. remained at St. Michael's for only three months, but during that time, plaintiffs allege that he was sexually assaulted by one of the home's counselors, resulting in further psychological damage. The sexual assault is alleged to have occurred on or before August 12, 1981.
 
 
 2
 This lawsuit relates to the fact that the Wisconsin Department of Health and Human Services ("DHHS") was conducting an investigation of St. Michael's at approximately the same time that Gioioso Jr. was residing there. DHHS initiated this investigation after three St. Michael's employees filed a complaint with the state agency on November 25, 1980, alleging financial improprieties, employee misconduct, and mismanagement. In response to this complaint and St. Michael's own application for a renewal of its license under state law, DHHS opened an investigation into the conditions and management of the home. On or about July 2, 1981, shortly before Gioioso Jr. came to St. Michael's, DHHS issued a confidential preliminary investigation report that found certain improprieties at St. Michael's and recommended solutions. DHHS sent Catholic Charities a letter summarizing its findings on August 31, 1981, after Gioioso Jr. had already been placed at St. Michael's. The letter indicated that the agency would maintain the confidentiality of its preliminary findings until such time as Catholic Charities had an opportunity to respond. Catholic Charities responded to the agency's findings on September 21, 1981, and DHHS subsequently issued its final report on December 29, 1981. By that time, Gioioso, Jr. no longer resided at the home. At no time in 1981 or 1982 did the Gioiosos request production of the DHHS preliminary investigation report or the agency's final report. In actuality, plaintiffs were unaware of the existence of those reports until August 16, 1990, at which time their counsel requested that the State of Wisconsin produce a copy of the final DHHS report. The State promptly complied with this request.
 
 
 3
 The Gioiosos filed this action in federal court on August 13, 1993, seeking to recover for the harm caused by the alleged sexual assault. The gravamen of plaintiffs' complaint is that if Gioioso, Sr. had known of the DHHS investigation and the incidents of misconduct detailed in the final DHHS report when he was deciding whether to place his son at St. Michael's in July 1981, he would have placed his son elsewhere. Under this scenario, Gioioso, Jr. then would not have been sexually assaulted and would not have suffered additional psychological harm. This theory underlay both of plaintiffs' claims, one brought under 42 U.S.C. Sec. 1983 and the other under Wisconsin state law.[1] The federal claim alleged that plaintiffs' constitutional right to public information had been infringed by a conspiracy amongst the defendants to conceal the DHHS investigation and the conditions existing at St. Michael's in 1980-81. The state law claim sought recovery in tort for the same civil conspiracy. The defendants moved to dismiss plaintiffs' complaint for failure to state a claim or in the alternative for summary judgment.
 
 
 4
 The district court treated plaintiffs' two-count complaint as stating three distinct causes of action: a federal civil rights claim, a state law civil conspiracy claim, and a state law misrepresentation claim. The court granted defendants' motion to dismiss the section 1983 claim and the state conspiracy claim and then granted summary judgment to defendants on the state misrepresentation claim. Plaintiffs now appeal.
 
 DISCUSSION
 
 5
 We review de novo the district court's decision to dismiss plaintiffs' federal claim and their state conspiracy claim. Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund, 25 F.3d 509, 512 (7th Cir.1994). We accept as true all well-pleaded factual allegations in plaintiffs' complaint and draw all reasonable inferences from those allegations in their favor. Pierce v. Village of Divernon, Illinois, 17 F.3d 1074, 1076 (7th Cir.1994).
 
 A. State Law Conspiracy Claim
 
 6
 The specific allegations and organization of plaintiffs' complaint are rather confusing, but we interpret count I to allege that church and state officials engaged in a conspiracy "to allow Catholic Charities, Inc., and/or the Diocese of La Crosse to keep secret the results of the investigation and recommendations for improvements to St. Michael's Home made prior to, during and after the stay of plaintiff Joseph J. Gioioso at St. Michael's Home for Children." (R. 2, p 4.) Beyond this failure to disclose the DHHS investigation and recommendations, plaintiffs do not purport to allege any intentional misrepresentations relating to the conditions or management of St. Michael's. The district court nonetheless treated count I as a claim both for conspiracy and fraudulent misrepresentation, and the court dismissed the conspiracy claim and granted summary judgment on the misrepresentation claim. This was an overly generous reading of count I of plaintiffs' complaint. We read count I as purporting to state a claim for civil conspiracy alone, as all of plaintiffs' allegations in count I relate to the alleged "conspiracy to keep silent" the DHHS investigation and recommendations. Plaintiffs do not allege any representations made to them during the relevant time period nor how any such representations were false or fraudulent in light of the ongoing investigation. Indeed, plaintiffs' brief on appeal also makes no attempt to explain how any of the defendants misrepresented the conditions at St. Michael's beyond their failure to disclose the existence of the DHHS investigation. Plaintiffs' brief instead treats count I as a conspiracy claim alone. See Gioiosos Br. at 5 ("no cause of action for misrepresentation was alleged by the plaintiffs in their complaint...."); see also id. at 21. We thus interpret count I to allege only a claim for civil conspiracy relating to the confidential nature of the DHHS investigation and report.[2]
 
 
 7
 Under Wisconsin law, a conspiracy exists when " 'two or more persons [act together] to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " Abdella v. Catlin, 255 N.W.2d 516, 519 (Wis.1977) (quoting Rodue v. Dill, 246 N.W.2d 507, 509 (Wis.1976)). The district court dismissed plaintiffs' conspiracy claim on the ground that their complaint failed to identify any "unlawful purpose" in defendants' decision to keep the preliminary DHHS investigation and its final report confidential. Plaintiffs argue that the district court erred in this regard because in 1981, the common law of Wisconsin recognized that as a matter of public policy, government documents are subject to public inspection except when such a right of inspection would be outweighed by the possibility of harm to the public interest. See, e.g., Newspapers, Inc. v. Breier, 279 N.W.2d 179, 184 (Wis.1979); State ex rel. Youmans v. Owens, 137 N.W.2d 470, 474-75 (Wis.1965), modified, 139 N.W.2d 241 (Wis.1966). Reading the complaint liberally, we assume the Gioiosos to imply that this common law right to inspect government documents obligated the defendants to publish DHHS' preliminary findings prior to the time that Gioioso, Jr. left St. Michael's on October 2, 1981. Gioioso, Sr.'s theory is that but for the conspiracy to conceal the DHHS investigation and findings, he would not have placed his son at St. Michael's in the first place or, having been placed, he would have withdrawn his son upon learning what DHHS had found. Thus, we are concerned only with whether an unlawful conspiracy existed prior to October 2, 1981.
 
 
 8
 The flaw in plaintiffs' argument is that the common law right to inspect government documents that was recognized by the Wisconsin Supreme Court in 1981 applies only once a citizen has requested access to specific government documents. Plaintiffs do not allege that they requested access to the DHHS reports prior to 1990, when their attorney requested and promptly received access to the documents. Nothing in the Wisconsin Supreme Court's decisions in either Breier or Youmans suggests that DHHS had a legal duty to volunteer either the preliminary investigation report or the final report to the public.[3] Instead, these cases actually support the State's right to maintain the confidentiality of sensitive preliminary investigative materials when disclosure might cause public harm. As Youmans explained, a report or other document based on "hearsay or suspicion, or inconclusive in nature, would be of small public benefit if made public, and might do great harm to reputations." 137 N.W.2d at 476. Thus, even assuming the existence of an agreement amongst the defendants to keep secret the fact and the results of DHHS' preliminary investigation, that agreement would not give rise to a civil conspiracy claim because it neither was directed toward an unlawful purpose nor did it utilize unlawful means. The district court therefore properly dismissed plaintiffs' state law conspiracy claim.
 
 B. Federal Constitutional Claim
 
 9
 To state a claim under 42 U.S.C. Sec. 1983, plaintiffs must allege facts sufficient to establish that they were deprived of an interest secured by the Constitution or laws of the United States, and that the deprivation of that interest was caused by a person or persons acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The first step in analyzing a section 1983 claim is to identify the specific constitutional right that allegedly was infringed. Albright v. Oliver, 114 S.Ct. 807, 811 (1994) (plurality opinion of Rehnquist, C.J.); Graham v. Connor, 490 U.S. 386, 394 (1989). Here, plaintiffs maintain that under the Supreme Court's decisions in Roe v. Wade, 410 U.S. 113 (1974), and Planned Parenthood v. Casey, 112 S.Ct. 2791 (1992), they have a constitutional right to privacy that protects them from governmental interference with decisions respecting family relationships and child-rearing. They contend that by withholding information relating to DHHS' investigation of St. Michael's, state authorities infringed their constitutional right to privacy. Yet this claim essentially rests on the notion that Wisconsin authorities had a duty under the fifth amendment to interfere with St. Michael's own privacy interests by volunteering to the public confidential information regarding an ongoing investigation of the facility. In a sense, plaintiffs are claiming an entitlement to government interference with the rights of another, rather than a violation of their own privacy interests. There can be no doubt that the individual privacy interests recognized by the Supreme Court in both Roe and Casey do not extend to the circumstances plaintiffs have alleged here. The constitutional right to privacy protects individuals from unwarranted governmental intrusions ( see, e.g., Casey, 112 S.Ct. at 2807; Eisenstadt v. Baird, 405 U.S. 438, 453 (1972)), and it cannot be interpreted to impose upon state authorities a duty to report confidential information relating to an ongoing agency investigation. Thus, because plaintiffs have not shown that any constitutional right was infringed by the conduct alleged in their complaint, their section 1983 claim was properly dismissed.
 
 C. Rule 38 Sanctions
 
 10
 The defendants requested below that sanctions be imposed on plaintiffs' counsel pursuant to Fed.R.Civ.P. 11. The district court initially granted their motion, finding that neither the federal or state law claims were well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Yet after further briefing, the district court exercised its discretion under the December 1, 1993 amendment to Rule 11 ( see Land, 25 F.3d at 515 (imposition of sanctions discretionary under amended rule)) and refused the request for sanctions:
 
 
 11
 The Court believes that monetary sanctions are not required in this case to deter repetition of Attorney Harman's conduct or comparable conduct by others similarly situated. The Court advises Attorney Harman that in the event he commits any future Rule 11 violation in this court, monetary sanctions will be awarded to deter said conduct.
 
 
 12
 (R. 69 at 2-3.) None of the defendants have appealed from the district court's denial of Rule 11 sanctions below. The individual defendants who are present and former employees of the State of Wisconsin have instead moved in this court for the imposition of Rule 11 sanctions against plaintiffs' counsel for his pursuit of a frivolous appeal. We note initially that Fed.R.Civ.P. 11 applies only to proceedings in the district court and not to appeals before this court. Rickels v. City of South Bend, No. 93-3046, 1994 U.S.App. LEXIS 22952, * 3 (7th Cir. Aug. 24, 1994); DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp., 14 F.3d 1163, 1165 (7th Cir.1994). A motion for sanctions addressed to the pursuit of a frivolous appeal should be made pursuant to Fed.R.App.P. 38, which authorizes a federal circuit court to "award just damages and single or double costs" once it finds an appeal to be frivolous.
 
 
 13
 An appeal is frivolous under Rule 38 " 'when the result is obvious or when the appellant's argument is wholly without merit.' " Flaherty v. Gas Research Institute, No. 93-3651, slip op. at 15, 1994 U.S.App. LEXIS 19489 (7th Cir. July 28, 1994) (quoting Ross v. City of Waukegan, 5 F.3d 1084, 1090 (7th Cir.1993)). This appeal satisfies those requirements. Had he properly reviewed the governing law in light of the facts alleged, plaintiffs' counsel would have determined that both the federal and state law claims were frivolous. We agree with the district court that neither claim was warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law. Even given such a finding, however, it was within the district court's discretion under the amended Rule 11 to decline to impose a sanction, and that decision has not been challenged here. We too have discretion under Rule 38 to decline to impose sanctions even where a sanction may have been justified. Flaherty, slip op. at 15; City of East St. Louis v. Circuit Court for the Twentieth Judicial Circuit, 986 F.2d 1142, 1145 (7th Cir.1993). This may have been an appropriate case to exercise that discretion but for the fact that plaintiffs' counsel was warned below that his clients' claims were frivolous. In spite of that warning, plaintiffs and their counsel chose to continue this meritless litigation by appealing to this court. Under these circumstances, we believe a sanction would serve Rule 38's purpose of deterring frivolous appeals. Cf. Perry v. Pogemiller, 16 F.3d 138, 140 (7th Cir.1993) ("if a litigant (even if unrepresented) persists in a hopeless cause long after it should have been clear to him, as a reasonable person, that his position was groundless, sanctions should be imposed.").
 
 
 14
 We therefore impose, in lieu of attorney's fees, a sanction of $750.00 on plaintiffs' counsel for his pursuit of this appeal. One-third of the sanction shall be payable to each of the three groups of defendants who submitted briefs to this court.
 
 
 15
 AFFIRMED WITH SANCTIONS.
 
 
 
 [1]
 The Gioiosos named as defendants, in addition to Catholic Charities, several DHHS employees, the Diocese of La Crosse, Incorporated (the "Diocese") and its Bishop, and the former president of Catholic Charities, and its former legal counsel. In its December 2, 1993 order, the district court entered judgment sua sponte in favor of certain of the individual defendants on the alternative grounds that they had not been properly served with a summons and complaint and because plaintiffs had failed to state a valid claim against them. The service aspect of the court's order is not challenged on appeal
 
 
 [2]
 We also think it unlikely that plaintiffs were attempting to advance an independent misrepresentation claim in their federal complaint because they had more explicitly alleged such a misrepresentation claim against the Diocese in state court. The claim did not proceed to trial, however, because the Wisconsin state courts determined that the Diocese was not a proper party, as it had not owned or operated St. Michael's during the relevant time period
 Moreover, even if count I could be interpreted to allege a fraudulent misrepresentation claim, we agree with the district court that such a claim would be barred by the statute of limitations.
 
 
 [3]
 Access to the final report is irrelevant in any event because the final report was not issued until months after Gioioso, Jr. had left St. Michael's