**Benjamin M. ANDERSON, Plaintiff–Appellant,**

**and**

**David M. Kahn, Appellant,**

**v.**

**COUNTY OF MONTGOMERY, State of Illinois, Kelly D. Long, Boatmen's National Bank of Central Illinois, et al., Defendants–Appellees.**

Nos. 96–2524, 96–2525.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1997.

Decided April 4, 1997.

James C. Cook (argued), Walker & Williams, Belleville, IL, for Defendants-Appellees County of Montgomery, State of Illinois, Kathryn Dobrinic, James Vazzi.

D. Bradley Blodgett, Hinshaw & Culbertson, Springfield, IL, for Defendant-Appellee Boatmen's National Bank of Central Illinois in No. 96-2524.

Patrick J. Londrigan, Heyl, Royster, Voelker & Allen, Springfield, IL, Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, IL, for Defendant-Appellee Samuel W. Panos.

James R. Potter, Londrigan, Potter & Randle, Springfield, IL, for Defendant-Appellee Case Credit, a division of J.I. Case, Company, a Tenneco Company.

Craig L. Unrath, Heyl, Royster, Voelker & Allen, Peoria, IL, for Defendant-Appellee Coffeen State Bank & Trust Company, now called Security National Bank in No. 96-2524, and Jon G. Noll, Springfield, IL, in No. 96-2525.

Jerald S. Post, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant-Appellee Michael Sheeley.

Kelly D. Long, Hillsboro, IL, Defendant-Appellee pro se, in No. 96-2524.

Kelly D. Long, Hillsboro, IL, for Defendant-Appellee Boatmen's National Bank of Central Illinois, in No. 96-2525.

David M. Kahn (argued), Waterloo, IL, Appellant pro se in No. 96-2524.

David M. Kahn (argued), Waterloo, for Plaintiff-Appellant Benjamin M. Anderson in No. 96-2525.

Before CUDAHY, ROVNER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Benjamin Anderson thinks he should not have been convicted of misdemeanor theft. Usually such a contention is aired in a criminal appeal or a habeas corpus petition, but because Anderson long ago finished serving his short jail term, he instead seeks damages under 42 U.S.C. § 1983. This appeal involves the dismissal of Anderson's suit and the sanctions imposed on his attorney, David Kahn, who filed and pursued the case on Anderson's behalf.

The material facts are not really in dispute. Anderson was a resident of Missouri until 1986, when he moved to Florida to avoid being held liable for child support. In Florida he assumed the alias "Buddy Dane Blaylock." In 1987 Anderson moved back to Missouri and stayed there until 1989. He then moved to Illinois and assumed the alias "Terry Lee Cain," again to avoid liability for child support.

While in Illinois, using the phony Cain name, Anderson purchased several vehicles and equipment with financing by defendants Boatmen's National Bank of Central Illinois and Illini Bank (a/k/a Coffeen State Bank and Trust Co.), among others. Anderson put some money down and made a few monthly payments, but he soon stopped paying and left Illinois (or so it seems) with some of the

goods. Attorney Kelly D. Long, a defendant here, represented Boatmen's in a lawsuit brought to recover Anderson's debt or repossess some of the encumbered equipment.

In February 1993 an indictment issued in Montgomery County, Illinois, charging Anderson with providing a false name to obtain, by deception, financing on some of the equipment (valued at over $10,000) with the intent to deprive the lender of its interest in the property. The charge, a felony, was followed by the issuance of a warrant for Anderson's arrest. Several months later Anderson was arrested in Missouri. After waiving extradition, he was driven to Illinois by Montgomery County Sheriff James Vazzi and Special Agent Michael Sheeley of the Illinois State Police, two more defendants in this case. Back in Illinois, apparently after stewing in jail for 26 days, Anderson was released from custody after his father posted bail on his behalf.

Attorney (and yes, defendant) Samuel Panos represented Anderson on the theft charge, and Kathryn Dobrinic, another defendant, prosecuted the case for Montgomery County. The parties negotiated what would appear to be a good deal; a plea of guilty to a lesser charge of theft under $300, a misdemeanor in Illinois. On January 12, 1995, Anderson signed a document entitled "Jury Waiver and Plea of Guilty," admitting his guilt on the charge, as well as a document entitled "Judgment and Sentence/Conditional Discharge," which set out the penalty he received—26 days incarceration (fully offset by the 26 days he spent in jail) and 24 months conditional discharge, a fine of $1,000, and restitution totaling $6,930.72 to the two banks. Part of the restitution was satisfied out of the bail money posted by Anderson's father. The state court conviction, to this day, has not been vacated.

Anderson feels that his guilty plea in the case was coerced by Panos and ·Dobrinic. He admits he signed the guilty plea document but claims he never appeared before a judge to be informed of his rights. This assertion, though, is drawn into serious question by the existence of a court transcript in which "Benjamin Anderson" (a/k/a Blaylock or Cain), represented by Attorney Samuel Panos, is questioned on the record, enters a guilty plea, and receives a ·sentence. Anderson claims that the transcript was fabricated by Panos, Dobrinic, and a court reporter (he does not allege that the state court judge participated· in the false-transcript scheme). Anderson's contention on this point is supported by four affidavits (his, his father's, and two friends'), which say he was outside the courtroom having a cigarette at the time indicated on the.transcript, so he could not have been in court.

On February 2, 1996, Attorney Kahn filed this federal· lawsuit for Anderson, suing everybody in sight. The rambling, 28–page, first amended complaint alleged constitutional claims under 42 U.S.C. §§ 1983 and 1985 and state law claims for false arrest and imprisonment and reckless conduct against Montgomery County; Attorney Dobrinic in her individual and official capacities; Sheriff Vazzi in his individual and official capacities; Boatmen's and its attorney, Long; Illini Bank; Panos; Sheeley individually; and one other party who, prior to appeal, was dismissed from the case. The amended complaint accused the defendants of participating in a massive conspiracy to coerce his guilty plea and cause him mental anguish, humiliation, and embarrassment.

Anderson was not bashful about seeking damages for the wrongs he says were visited upon him. For his § 1983 claim alone he sought, in his own words,

> judgment against Defendant, Montgomerey County, Illinois, for actual damages in the reasonable sum of One Hundred Fifty Thousand Dollars ($150,000.00), and against Defendant, Montgomerey County, Illinois, for punitive damages in the reasonable sum of One Hundred Fifty Thousand Dollars ($150,000.00), and against Defendant, Kathryn Dobrinic, for actual damages in the reasonable sum of One Million Dollars ($1,000,000.00), and against Defendant, Kathryn Dobrinic, for punitive damages in the reasonable sum of One Million Dollars ($1,000,000:00), and against Defendant, Michael Scheeley, for actual damages in the reasonable sum of One Million Five Hundred Thousand Dollars, (1,500,000.00), and against Defendant, Mi- .

chael Scheeley, for punitive damages in the reasonable sum of Three Million Dollars ($3,000,000.00), and against Defendant, Kelly D. Long, for actual damages in the reasonable sum of Five Hundred Thousand Dollars ($500,000.00), and against Defendant, Kelly D. Long, for punitive damages in the reasonable sum of Five Hundred Thousand Dollars ($500,-000.00), and against Defendant, James Vazzi, for actual damages in the reasonable sum of Twenty Five Thousand Dollars ($25,000.00), and against Defendant, James Vazzi, for punitive damages in the reasonable sum of Twenty Five Thousand Dollars ($25,000.00), and against Defendant, Case Credit, a Division of J.I. Case, a Tenneco Company, for actual damages in the reasonable sum of One Million Dollars ($1,000,000.00), and against Defendant, Case Credit, a Division of J.I. Case, a Tenneco Company, for punitive damages in the reasonable sum of Two Million Dollars ($2,000,000.00) . . . .

These rather shameless requests, totaling $10,850,000, were then joined with other demands—all painfully laid out as to each defendant—on other causes of action. The grand total Anderson sought was more than a half a billion dollars.

Although not included in the actual recitation of claims, interpreting the amended complaint in Anderson's favor, various factual assertions additionally accuse someone in Missouri of denying him a right to counsel before being extradited, Sheeley of conducting an illegal search of Anderson's residence, and Sheeley and Vazzi of recklessly endangering Anderson's life by driving 95 miles an hour in a squad car while transporting him from Missouri to Illinois after he waived extradition.

The defendants moved for dismissal or summary judgment. Attorney Kahn requested and was given numerous extensions (at least 10, it appears) of time to reply to the motions, several because of an injury he apparently suffered in March 1996. Eventually Kahn's responses filtered into the court over a one-week period. In his May 13, 1996, responses to some of the motions to dismiss, Anderson, via Kahn, first raised the idea that

Anderson never appeared before a judge for sentencing and that the transcript indicating that he did so was a fake, as well as an assertion that Sheeley and Dobrinic misled the grand jury in securing the original indictment. At this point, Kahn still insisted there were valid claims under § 1985, even though he "reluctantly admit[ted] that the cases cited by the Defendant's [sic] do support [the] proposition" that such claims failed because there was no racial or class-based discrimination against Anderson, who is a white male. The next day, after apparently doing some research, Kahn realized he had to abandon claims against some of the defendants. On May 14 he filed motions to dismiss Montgomery County and Long completely, as well as Dobrinic and Vazzi in their official capacities.

Shortly after Kahn's filings the district court granted the defendants' motions to dismiss (properly treated as summary judgment motions) and for summary judgment. Several parties then moved for Rule 11 sanctions against Attorney Kahn. After a hearing, the district court ordered Kahn to pay $9,681.95 in sanctions to various defendants.

Anderson appeals from the grant of summary judgment and Kahn opposes the sanction order. On appeal, Anderson admits that his § 1985 claim was unwarranted and he does not dispute the dismissal of his § 1983 claims against Montgomery County, Long, Dobrinic (official capacity only), and Vazzi (official capacity only). He does, however, challenge the dismissal of some § 1983 claims and whatever state law claims can be gleaned from his factual allegations.

Most of Anderson's § 1983 claims evaporate under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* holds that when a § 1983 claim requires a finding that a criminal conviction (or sentence) was invalidly obtained, no cause of action lies unless the conviction (or sentence) that would be impugned has already been "reversed on direct appeal, expunged by executive order, invalidated by a state tribunal authorized to make such a determination, or called into question by a federal court's grant of a writ of habeas corpus." 512 U.S. at 487, 114 S.Ct. at 2372. And as we recently noted, the injury alleged—not

the relief sought—determines whether a claim implicates the validity of a sentence or conviction. *Heck*, 512 U.S. at 480–82, 114 S.Ct. at 2369–70; *Ryan v. DuPage County Jury Comm'n*, 105 F.3d 329, 331 (7th Cir. 1996).

Anderson now does not dispute that most of his § 1983 claims challenge the legality of his conviction—that the prosecutor and his attorney coerced his guilty plea and conspired with the court reporter to obtain his conviction and take his bond money by fabricating the plea and sentencing hearing. If he were to win on these monetary claims, a court would have to hold that a conspiracy deprived him of his rights, in violation of the Constitution, and that his conviction should not have occurred. Because Anderson's state court conviction sat undisturbed when this suit was filed, *Heck* closes the door, or so it seems, on the claims. But Anderson says *Heck* applies only to cases where habeas corpus relief is available. Because he was not incarcerated when he brought his § 1983 claims and thus had no habeas corpus relief available to him (he ignores, we note, the strong possibility that his "conditional discharge" status made him eligible for habeas relief, *see e.g., Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)), he says *Heck* does not completely bar his claims. On a blank slate, or if someone could safely rely on one of the concurring opinions in *Heck*, this could be a plausible argument. Four Justices, in the concurrence written by Justice Souter, gave some support to Anderson's position. But a concurrence is not the law, and the majority specifically rejected the notion Anderson proffers:

> Justice SOUTER also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but *thinks it necessary to abandon that principle in those cases ... involving former state prisoners who, because they are no longer in custody, cannot bring postconviction challenges....* We think the principle barring collateral attacks—a longstanding and deeply rooted feature of both the common law and our own jurisprudence—is not rendered inapplicable by

the fortuity that a convicted criminal is no longer incarcerated.

512 U.S. at 490 n. 10, 114 S.Ct. at 2374 n. 10. *Heck*, therefore, dooms Anderson's argument on this point. Furthermore, even if the statement we quote from *Heck* is dicta, the Sixth Circuit recently noted that because *Heck* relied upon the common law of tort liability, where proof of the illegality of a conviction is a necessary element of certain § 1983 claims, rather than on the need to preserve habeas corpus as the exclusive federal remedy, "*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated." *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995). We agree with the Sixth Circuit's holding in *Schilling*. The fact that a plaintiff is no longer incarcerated has no bearing on the applicability of *Heck*. And because Anderson admits that his state court conviction has not been reversed, expunged, invalidated, or otherwise impugned, he has failed to state a § 1983 claim regarding anything involving a challenge to his conviction. That it may be difficult (perhaps in some cases—mostly due to a lapse of time—even impossible) to get a conviction reversed or expunged does not constitute a reason for bypassing the holding in *Heck*. *Ryan*, 105 F.3d at 331.

Not all constitutional injuries alleged by Anderson, however, would impeach the validity of his conviction. *See Simpson v. Rowan*, 73 F.3d 134 (7th Cir.1995) (illegal search and arrest claims are not barred by *Heck*), *cert. denied*, — U.S. ——, 117 S.Ct. 104, 136 L.Ed.2d 58 (1996). But even reading the amended complaint in Anderson's favor, any remaining § 1983 claims that do not depend on invalidating his prior conviction are meritless. For instance, in the amended complaint Anderson claimed he was falsely arrested as a "fugitive from justice." State court records attached to some of the defendants' motions to dismiss indicate that a warrant for Anderson's arrest issued on February 4, 1993, in connection with the state indictment for felony theft. Anderson was not apprehended until February 1, 1994, so he was indeed a fugitive from justice, as that term is commonly understood, for almost a year. Anderson asserted no other basis to challenge his arrest, so summary judgment

against him on this point was properly ordered.

■ Anderson also argues that Sheeley lied to the grand jury, but the transcript pages presented to the district court defeat Anderson's claim. Anderson claims Sheeley lied (1) because Sheeley told the grand jury Anderson "as I recall, made two monthly payments of the piece of equipment and that was it," while an affidavit from an employee of the lender indicates Anderson actually made a down payment and 6 to 8 monthly payments, and (2) the lender never instructed Sheeley to pursue criminal action, yet theft of its equipment was the charge brought against Anderson. The first point is silly—Sheeley qualified the statement with "as I recall," and whether Anderson made two or six payments doesn't matter because he failed to pay the full amount due and the lender's interest in the encumbered property was therefore jeopardized by his actions. The second point is sillier—regardless of whether the lender wanted criminal charges pressed, a prosecutor—not a victim—decides to pursue cases in criminal court. *See People v. Travis*, 94 Ill.App.3d 983, 992, 50 Ill.Dec. 325, 419 N.E.2d 433 (1981) (when a prosecutor has probable cause to believe that the accused committed an offense defined by Illinois statute, it is within the prosecutor's discretion whether or not to prosecute); *see also Davis v. Owens*, 973 F.2d 574, 577 (7th Cir.1992) (in Illinois, prosecutor, not police officer, decides whether to charge a suspect with a crime).

■ Similarly, reading the complaint in his favor, some of the facts could be construed as a claim for an illegal search when Officer Sheeley walked around Anderson's property. But Anderson failed to claim or indicate how any such search harmed him or whether it was in fact a "search." He did not allege that Sheeley did any damage by walking around or that anything was seized. On appeal Anderson concedes he alleged no compensable injury but argues that this claim should not have been dismissed because full discovery would have enabled him to ascertain the extent of the search and find a compensable injury to assert. A federal lawsuit, however, is not a fishing expedition.

Anderson was out of jail for almost a year when he filed this case; if by then he knew neither the extent of the search nor how he was harmed by it, he can't complain when this claim, on this record, was put to rest by the district court.

■ Finally, Anderson argues that the district court should have allowed him to file a second amended complaint to correct any deficiencies. Kahn brought up the motion to amend at the district court's June 4, 1996, hearing on sanctions, and the motion was denied. The district court found that in light of *Heck*, everything Kahn wanted to file made no difference in the case. Anderson now contends that the amendment should have been allowed because Kahn was in a wheelchair (temporarily) which made it difficult for him to file the amended pleadings any earlier. He also says the information regarding the "false transcript" and Officer Sheeley's supposed lies to the grand jury were "new evidence" to him.

In considering this claim, we think the district court was generous in regard to Kahn's ailments. Kahn was granted 10 extensions of time to prepare responses to the motions to dismiss. He finally filed some of his responses with the court 3 days after the last extended due date, and other responses filtered in over the next week. The exhibits he referenced in most of his responses were filed even later. The district court nevertheless tolerated Kahn's delinquencies (Kahn apparently thought postmarking a brief by the required date was equivalent to filing it) and took Kahn's materials into consideration. As to the "new evidence," the statement by Anderson that he did not attend a sentencing hearing and the contents of Sheeley's grand jury testimony were available long before June 1996 and, as the district court correctly pointed out, make no difference regarding dismissal of the case.

The federal claims were properly disposed in this case, and the district court's decision not to exercise jurisdiction over any state law claims cannot be deemed incorrect on this record, which brings us to Kahn's appeal.

■ The district judge imposed sanctions under Federal Rule of Civil Procedure 11

because he felt Kahn failed to perform a reasonable inquiry before filing the case and, once the case got going, persisted in pursuing frivolous claims. We review this grant of sanctions for an abuse of discretion. *Johnson v. A.W. Chesterton Co.,* 18 F.3d 1362, 1364 (7th Cir.1994).

Fed.R.Civ.P. 11(b) states that by presenting a pleading to a court, an attorney certifies

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> . . . .
>
> (2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [or]
>
> (3) the allegations and other factual contentions have evidentiary support. . . .

The district court believed sanctions were justified here for several reasons, including the fact that Kahn failed to consider the impact of *Heck* on most of the claims. Our review of the record confirms the view of the district court; Kahn didn't consider *Heck* or its sound principles before this suit was filed.

 In addition, even if Kahn had a nonfrivolous argument regarding the application of *Heck,* the allegation of what actually amounted to criminal wrongdoing on the part of the Montgomery County attorney, a defense attorney, and later a court reporter for fabricating a sentencing hearing transcript is such an extremely serious charge that it required a serious investigation by Kahn before he acted. Judges often see unrepresented prisoners claim that everyone connected with their cases—including court officers—participated in grandiose conspiracies to violate their rights and secure their convictions illegally. It is a rare event, though, to see a licensed attorney proffering claims of this sort, which impugn the honesty of court officers. The required level of investigation into the facts before making an accusation depends, of course, on the circumstances of the case. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 932

(7th Cir.1989). In this case it was incumbent upon Kahn to look into the false-transcript accusation with a lot more care than he used. Obtaining affidavits from his client—a man who admits to skipping town to avoid child support, assuming aliases and obtaining credit under false names, and failing to pay off his creditors—and his client's father and friends was not sufficient. Kahn could have checked with, among others, the state court judge's staff (if not the judge himself), and he could and should have carefully reviewed the state court records before he filed this claim. To have made such a serious accusation and then say more time is needed for real discovery on the matter is not acceptable.

Certain allegations in the amended complaint indicate that Kahn was unfamiliar with applicable federal law and procedures. For instance, in various documents filed in district court Kahn contended that the original indictment was for felony theft, yet Anderson pleaded guilty to misdemeanor theft, as if this had significance. But it has no significance because defendants routinely plead guilty to lesser charges, and that doesn't mean that something sinister has occurred. When an attorney takes a case in an area of law about which he is a little uncertain, he should get educated quickly or, better yet, pass the case to a different attorney. Courts and opposing parties—not to mention clients—deserve nothing less.

Actually, as we closely consider Kahn's present position, he seems to agree that sanctions were not inappropriate as he focuses most of his fire on their form and amount. He even suggests that instead of a monetary penalty we consider alternative sanctions such as reporting him to the Illinois Bar or curtailing his access to federal courts.

Rule 11 indicates that courts may order a sanctioned party to pay the prevailing party its reasonable expenses and attorney fees incurred as a direct result of the violation, if an order to that effect is warranted for effective deterrence. Fed.R.Civ.P. 11(c)(1)(A) and (c)(2). That's what the district court did here, reviewing affidavits from the defendants as to the amount they spent defending the meritless amended complaint (and filing

for sanctions), finding the amounts reasonable, and ordering Kahn to pay the total as a deterrent to filing future frivolous lawsuits.

■■■■ But the defendants are not automatically entitled to receive full reimbursement of their expenses just because the case was frivolous. A Rule 11 sanction is *not* meant to reimburse opposing parties for their costs of defense. The purpose of the rule is to deter baseless filings, *Johnson,* 18 F.3d at 1365, and the sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," Fed.R.Civ.P. 11(c)(2). When imposing sanctions, a court should take ability to pay into account. *Johnson,* 18 F.3d at 1366. And the least severe sanction that is adequate to serve the purpose of the rule should be imposed. *Id.* To a sole practitioner with a practice that is not lucrative, a fine of $500 may be painful enough to make the desired impact. To a big law firm, a much larger sum may not be a deterrent. The burden is on the sanctioned party, though, to show he cannot pay a reasonable sanction. *Id.*

Kahn offers several reasons why he should not be fined or why the fine should be reduced: as a mitigating factor, he filed a motion to dismiss the improperly named parties and finally did admit that the § 1985 claim had no merit; he suffered a leg injury "and therefore was unable to go to the law library to do the necessary research" (he does not have Westlaw or Lexis access, either); and finally, he has a negative net worth and is in dire financial circumstances, struggling to meet basic office bills.

Kahn, though, also gives us several good reasons for not disturbing the sanctions order. First, when presented with the defendants' affidavits setting out their costs and fees, Kahn said they were reasonable:

> THE COURT: So I assume if I'm understanding what you're saying, is that in general you do not question the various amounts that have been set down?
>
> MR. KAHN: No, that's fair and reasonable. The amounts—
>
> THE COURT: As to all of those fees?
>
> MR. KAHN: Yes, sir.

> THE COURT: As to all of the defendants?
>
> MR. KAHN: Yes, sir.

Second, Kahn dragged not one but eight defendants into the case, a suit with no legal or evidentiary merit. Then, after losing the case and being sanctioned for bringing it, he appealed, dragging the defendants into more work, costs, and attorney fees.

Third, although Kahn's briefs before us indicate his promise to stick to "bread and butter" cases in the future and not get into cases that are over his head, he admitted during oral argument that he already has begun to drift back into more complex matters.

Finally, Kahn could have pointed to his financial condition at the sanction hearing but he chose not to do so. At the hearing he said:

> There are several cases in Miller and Wright where it says that if you raise the defense of or the question of inability to pay, and document it, that should not only go into not as to when you pay, but if you pay. Because these cases explain it's not the intention of the code to bankrupt an attorney.
>
> And I purposely did not bring that to the Court's attention because the truth of the matter is I sought big bucks against these people, I sought punitive damages. And for me to be a wimp and say, oh my God, I can't pay it, that's not right. But so you don't jam me for contempt of court, and I realize I have to provide detailed financial statements; I have negative net worth. But if it is the last thing I ever do, I will pay these people off. If it's not reversed on appeal, I swear to God I will pay them off, because some things are just not morally right.

A couple weeks later Kahn moved for an order staying execution of the judgment during the appeal. Kahn included an affidavit indicating how few assets he had, but then, in his memorandum, he said:

> Since that time, I recommended to my client that he appeal the order for summary judgment, and since the purpose of sanctions is to deter, and same has not

deterred Kahn in pursuing this matter, in regards to most of the defendants, this is an additional reason why I am not arguing that inability to pay should not be considered as a circumstance.

From the context of this statement, the double negative should be ignored. Apparently, Kahn was looking for permission to defer payment or for the court to set up a payment plan, rather than obtaining a reduction in the amount of the award.

Kahn basically asks us to hold that the district court abused its discretion when it took him at his word regarding his promise to pay and the reasonableness of the defendants' fees. We will not do so—and *could not* do so without diminishing our fundamental requirement that attorney representations to a court be truthful. It is not up to us to protect attorneys from promises they later don't think they can keep. Because Kahn failed to effectively bring up his financial circumstances, and in fact expressly indicated he was not relying on that subject, any argument for reduction in the size of the sanction due to dire straits is waived. The judgment of the district court is therefore

AFFIRMED.