142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Hearold LACY, Plaintiff-Appellant,
v.
AMERITECH MOBILE COMMUNICATIONS, INC., Defendant-Appellee.
 No. 97-2258.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted Mar. 26, 1998*.
Decided Mar. 26, 1998.
Rehearing Denied April 24, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 95 C 3061 David H. Coar, Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 At the end of 1992, Ameritech Mobile Communications, Inc. terminated Hearold Lacy from his job as a customer service representative. Lacy filed suit against Ameritech pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging racial and sexual discrimination, sexual harassment, and retaliation. Ameritech filed a motion for summary judgment, which the district court granted. On appeal, Lacy contends that summary judgment was inappropriate because Ameritech did not explain why it retained white employees with unsatisfactory performance records yet fired him. We affirm.
 
 
 2
 Ameritech hired Lacy, an African American male, in December of 1990 to serve as an Illinois-based customer service representative ("CSR"). As a CSR, Lacy's primary duties were to answer customer questions regarding service and billing matters. Ameritech expects CSRs to adhere to posted daily and weekly schedules that have specified staring times, breaks, lunch periods, and ending times. However, within just a few months of being hired, Lacy either was absent from work, late for work, or away from his phone six times. Lacy's supervisors often spoke to him regarding his absences and the need to adhere to the posted schedule, but he continued to be tardy. In fact, between May of 1991 and December of 1992, Lacy amassed at least thirty-five more scheduling infractions. In addition to these infractions, Lacy failed to provide adequate customer service on numerous occasions.
 
 
 3
 At the end of 1991, Lacy's supervisor, Joseph Schnaufer, evaluated Lacy's performance. The evaluation, which was the same for all CSRs, took into consideration the quality of service provided to customers; customer retention; the ability to sell enhanced services to customers; and the ability to enter complete and accurate data, among other things. Schnaufer found that although CSRs were expected to handle 95% of their monitored calls effectively, Lacy handled only 84% of his monitored calls effectively; that although CSRs were expected to be available for customer calls 60% of the time, Lacy was available only 53.7% of the time; and that although CSRs were expected to sell additional Ameritech services on 2% of their total calls, Lacy sold enhanced services on only 1.3% of his total calls. Consequently, Schnaufer gave Lacy a performance rating of "3" on a scale of one to three (one being the highest and three being the lowest), as well as the worst performance review and lowest ranking of the CSRs he supervised.
 
 
 4
 In mid-1992, Ameritech decided to re-size its workforce and terminate those employees who lacked required skills and adequate performance records. To determine which employees to terminate, Ameritech ranked employees in similar salary ranges, taking into consideration each employee's 1990 and 1991 performance ratings; the extent to which the employee reached his 1991 target bonus; and the degree to which the employee demonstrated leadership characteristics, growth potential, special job skills, and teamwork skills, among other things. After ranking all of the employees according to these criteria, group managers were permitted to re-rank the employees according to their 1992 performances. Those employees who demonstrated improvement in evaluated areas in 1992 moved up in the rankings, while those who deteriorated moved down in the rankings.
 
 
 5
 Lacy was evaluated along with 357 other Ameritech employees in his salary range, including fifty-six other Illinois CSRs, and he placed 354th overall. Of the fifty-seven Illinois CSRs who were ranked, Lacy placed third from the bottom, with David Pope (an African American male) and Janice Elliott-Rivera (an African American female) occupying the two CSR slots below Lacy. The CSR managers then factored 1992 performances into the rankings. Because Lacy's 1992 performance neither improved nor deteriorated, Lacy's managers decided that his placement should remain the same. However, the same managers decided to raise David Pope's ranking out of the bottom three because of his improved 1992 performance, while Jeannette Sielski, a white female, was moved into the bottom three because of her poor 1992 performance. Thus, when Ameritech decided to terminate the three lowest performing CSRs, Lacy, Elliott-Rivera and Sielski lost their jobs.
 
 
 6
 On appeal, Lacy appears to argue that the district court erred in granting summary judgment because Ameritech failed to explain why it fired him but retained white employees with unsatisfactory 1991 evaluations and lesser seniority. In other words, Lacy appears to dispute the adequacy of Ameritech's stated reason for his termination. This court reviews de novo the district court's decision to grant Ameritech's motion for summary judgment, construing the record in the light most favorable to Lacy, the non-moving party. Drake v. Minnesota Mining and Mfg. Co., 134 F.3d 878, 883 (7th Cir.1998). Summary judgment is appropriate in employment discrimination cases where no rational factfinder could believe that the employer lied about its proffered reasons for dismissal. Weisbrot v. Medical College of Wisconsin, 79 F.3d 677, 682 (7th Cir.1996); see also Paluki v. Sears, Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir.1989) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), in support of the proposition that a district court must grant summary judgment in favor of the employer when a reasonable jury could not conclude that the employer discriminated against the plaintiff-employee).
 
 
 7
 The district court assumed the existence of a prima facie case of racial discrimination. Accordingly, under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the burden of production shifted to Ameritech to articulate a legitimate, non-discriminatory reason for the actions it took against Lacy. Ameritech explained in its motion for summary judgment that termination decisions were made according to a uniformly applied ranking system that evaluated each employee's performance according to his 1990 and 1991 evaluations and his performance in various articulated categories, including breadth and depth of experience, leadership characteristics, and potential to grow and change with the company. Seniority does not appear to have factored in the rankings. Ameritech also explained that an employee's ranking could be adjusted upwards or downwards based on her 1992 performance. Because Lacy's 1992 performance neither raised nor lowered his ranking, he remained among the bottom three CSRs and lost his job when Ameritech decided to terminate the three lowest-ranking CSRs.
 
 
 8
 We conclude, as did the district court, that Ameritech's explanation for how it distinguished in 1992 between Lacy and other employees (including white employees) who received the same 1991 evaluation score was both legitimate and non-discriminatory. Accordingly, Lacy's contention that Ameritech failed to explain why he was fired--as opposed to certain white employees--is without merit. Moreover, Lacy fails to offer any evidence indicating that Ameritech's explanation is pretextual. See Kaniff v. Allstate Ins. Co., 121 F.3d 258, 263 (7th Cir.1997). Indeed, nothing in Ameritech's treatment of Lacy can be read to evidence racial discrimination. See Schultz v. General Elec. Capital Corp., 37 F.3d 329, 335 (7th Cir.1994). The mere fact that white employees who received poor 1991 evaluations retained their jobs in 1992 does not render Lacy's dismissal a racially motivated event, especially in light of the fact that a white female was discharged at the same time as Lacy after her poor 1992 performance caused her to fall in the rankings. We also note the fact that an African American male was raised in the rankings because of his improved 1992 performance and thus avoided being terminated from Ameritech. Because we are satisfied that Ameritech's reasons for terminating Lacy were honest and genuinely motivated, Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir.1997), we find no merit to Lacy's contention that summary judgment was improper.
 
 
 9
 Lacy next argues that summary judgment was inappropriate because Ameritech did not explain why it understated his 1991 bonus by twenty-three percentage points. Lacy contends that this mistake is significant because the 1992 rankings took into consideration the extent to which he reached his 1991 target bonus. Lacy did not raise the argument before the district court, however, and thus waived it on appeal. Anderson v. County of Montgomery, 111 F.3d 494, 503 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 371, 139 L.Ed.2d 289 (1997). Finally, we note that Lacy raises numerous additional arguments in his reply brief. His failure to articulate them in his initial brief renders them waived, as well. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1988).
 
 
 10
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)