**Wendell NOE, Plaintiff,**

v.

**INTERSTATE BRANDS CORPORATION, formerly known as Continental Baking, and Interstate Bakeries Corporation, Randy Green, and John Campbell, Defendant.**

**No. IP 97–0029–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 2, 1999.

**514**

Elaine Parran Boyd, Lee & Clark, Indianapolis, IN, for plaintiff.

Wayne O. Adams III, Steven F. Pockrass, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, Leonard Singer, J. Randall Coffey, Bioff Singer & Finucane, Kansas City, MO, for defendant.

## ORDER REQUIRING PLAINTIFF'S COUNSEL TO SHOW CAUSE WHY DEFENDANT'S MOTION FOR ATTORNEYS' FEES SHOULD NOT BE GRANTED AND ORDER GRANTING DEFENDANT'S RULE 11 MOTION TO SANCTION PLAINTIFF'S COUNSEL AND LAW FIRM

BARKER, Chief Judge.

In yet another chapter of the saga that characterizes this case, defendant Interstate Brands Corporation ("IBC"), on September 30, 1998, moved for Rule 11 sanctions against plaintiff's counsel, Elaine Parran Boyd ("Ms. Boyd"), and her law firm, Nathaniel Lee & Associates.[1] As the prevailing party in this litigation, IBC also has moved for attorneys' fees pursuant to 42 U.S.C. § 1988.[2] By October 27, 1998, plaintiff's counsel still had not responded to either motion, even though her window in which to file a responsive pleading had closed, so we issued an order for plaintiff to show cause why IBC's motions for sanctions and attorneys' fees should not be granted. On November 2, 1998, Ms. Boyd filed a two-page "Response to Defendants' Motion for Sanctions Under Rule 11," to which she attached her own affidavit explaining that she failed to respond to the Rule 11 motion because she was "hopeful" that the issue would be settled and because she was too busy to file a responsive pleading. Ms. Boyd again neglected to respond to or otherwise mention IBC's motion to recover $142,165.00 in attorneys' fees under 42 U.S.C. § 1988.

Therefore, we again order plaintiff's counsel to show cause, by September 20, 1999, why IBC's motion for attorneys' fees should not be granted. The significance of the amount at stake, as well as the generous response time we are affording plaintiff's counsel, should provide Ms. Boyd with ample motivation and opportunity to fashion a well-prepared and responsive pleading, but we have been down this road previously with Ms. Boyd where we must coax various pleadings from her, so we will see if it happens or not. We also direct the defendants to submit a significantly more detailed accounting of its attorneys' fees than the current, generalized request before us now. The itemized break-

---

1. Interstate Bakeries Corporation, Randy Green ("Green"), and John Campbell ("Campbell") also are defendants in this matter. Counsel for IBC represents these defendants as well, and since IBC seeks sanctions for claims brought against Interstate Bakeries Corporation, Green, and Campbell, we will treat IBC's motion as defendants' joint motion for Rule 11 sanctions.

2. The central dispute in this matter involved plaintiff's Title VII contentions. However, defendants fail to invoke 42 U.S.C. § 2000e–5(k) as a statutory basis for recovery of its attorneys fees incurred from defending those Title VII claims, which we suspect may have been due to inadvertence. See Munson v. Milwaukee Bd. of Sch. Dirs., 969 F.2d 266, 272 n. 2 (7th Cir.1992) ("The Supreme Court has made clear that all statutes in which Congress has authorized an award of fees to a prevailing party, including 42 U.S.C. §§ 2000e–5(k) and 1988, are to be interpreted according to the same general standards.") (citations omitted); Evans v. City of Evanston, 941 F.2d 473, 475 n. 1 (7th Cir.1991).

down should include such information as the number of hours dedicated to each of plaintiff's claims. Further, our ruling on IBC's Rule 11 motion, which includes an award for expenses, may affect the Bill of Costs that defendants submitted on September 30, 1998. We direct the defendants to adjust those cost calculations and file a modified Bill of Costs if appropriate. As for IBC's motion for Rule 11 sanctions against Ms. Boyd and her law firm, we must *GRANT* that motion for the reasons discussed below.

Federal Rule of Civil Procedure 11 provides that by presenting a pleading to a court, an attorney certifies:

> to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass, ...
> (2) the claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [or]
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; ...

Fed.R.Civ.P. 11(b). Hence, a litigant who is of "pure heart" and believes in good faith that her claims are valid, yet never objectively investigates the facts or the law before filing a complaint may very well be tempting fate under Rule 11. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 931–32 (7th Cir.1989); Advisory Committee Note, 1993 Amendments. On the other hand, a litigant whose claims are far from frivolous and are robustly supported by a careful prefiling investigation into the facts and the law may also be subjected to sanctions if she brings those claims for an improper purpose. *See Mars Steel*, 880 F.2d at 931–32.

▉ Rule 11's primary objective is to "give a litigant pause to 'stop, think, and investigate more carefully' before filing papers, thereby streamlining the administration and procedure of the federal courts." *Zah-*

*ran v. Cleary Bldg. Corp.*, 182 F.3d 923, 1999 WL 439402, at *4 (7th Cir.1999) (*quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393–94, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (internal quotation and citation omitted)). However, Rule 11 also emphasizes the duty of continuing candor by subjecting litigants to potential sanctions for insisting upon a position after it becomes untenable. *See* Advisory Committee Note, 1993 Amendments. Rule 11 allows courts to order a sanctioned party to pay the prevailing party its reasonable expenses and attorneys' fees incurred as a direct result of the violation, if an order to that effect is warranted for deterrence. *See* Fed.R.Civ.P. 11(c)(1)(A) & (c)(2); *Anderson v. County of Montgomery*, 111 F.3d 494, 501 (7th Cir.1997). Moreover, absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. *See* Fed.R.Civ.P. 11(c)(1)(A). The Seventh Circuit reviews a district court's award of sanctions for an abuse of discretion, with Rule 11 affording district courts a variety of monetary and non-monetary sanctions to achieve the Rule's aspiration of deterring the filing of frivolous claims. *See Anderson*, 111 F.3d at 501–02; Fed.R.Civ.P. 11(c)(2); Advisory Committee Note, 1993 Amendments.

IBC claims that Ms. Boyd pursued three frivolous and unreasonable claims that justify imposition of sanctions in this case. First, IBC asserts that Ms. Boyd unreasonably persisted in contending that plaintiff Wendell Noe's supervisors were individually liable for Title VII violations, despite its repeated citation to Seventh Circuit authority establishing that individuals may not be held liable under Title VII. Second, IBC claims that plaintiff's counsel unreasonably maintained a claim against defendants under 42 U.S.C. § 1981 because she failed to address or plead an essential element of that cause of action—the existence and enforcement of an express or implied contractual right—and because Ms. Boyd failed to respond in any manner to defendants' joint motion for summary judgment on that issue. Third, IBC contends that Ms. Boyd failed to investigate adequately the Interstate Bakeries Corporation ("In-

terstate Bakeries") before joining it as a defendant in this case, and that Ms. Boyd persisted in the action against Interstate Bakeries after defendants denied that Interstate Bakeries ever employed Noe. In this Court's June 24, 1998, Entry, we granted the defendants' joint motion for summary judgment on each of these claims.

Plaintiff counsel's belated two-page Response brief evidences the same type of anemic treatment of legal issues that has characterized her handling of matters throughout the life of this case. Ms. Boyd claims that she subjectively "believed" that these claims were "lawful and legitimate," and that she and her client were "hard-working, tax-paying citizen[s] of the United States [who] sought justice for what [they] believed was a grave injustice."[3] Also, completely missing the point of IBC's objections to both the section 1981 claim and the claim against the individual defendants, Ms. Boyd asserts that she alleged the section 1981 claim against Noe's individual supervisors because Noe believed that he had been the victim of retaliation for supporting black employees. Finally, Ms. Boyd asserts that she pursued a claim against Interstate Bakeries because she relied on documentary evidence attached to the defendants' summary judgment motion that indicated that Interstate Bakeries was Noe's actual employer who controlled personnel and production affairs for the Indianapolis plant.

■ We find most of these contentions entirely unavailing given our familiarity with the history of this litigation, and we agree with the defendants that recovery of attorneys' fees incurred from defending against two of these three claims constitutes an appropriate Rule 11 sanction against Ms. Boyd and her law firm. First, Ms. Boyd's pursuit of a claim against her client's individual supervisors, Green and Campbell, was legally frivolous from the start. We recognized in our summary judgment Entry that it is "well-established" in our circuit that "individuals may not be liable under Title VII."

Court's June 24, 1998, Entry at 4; see *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir.1995). A reasonable investigation would have revealed this fact to Ms. Boyd if she had exerted minimal effort in researching her claim prior to filing either her original or amended complaint. Unfortunately, plaintiff's counsel continued her ill-conceived advocacy after defendants expressly alerted her to the law of this circuit in their July 15, 1997, "Brief Regarding Federal Rule 19(b) Defenses." (Defendants cited six additional cases from the Fifth, Eighth, Ninth and Tenth circuits for the proposition that individual supervisors are not liable for Title VII violations.)

Instead of heeding this precedent or advancing an argument why it should be modified, Ms. Boyd filed an Amended Complaint on September 11, 1997. She failed to remove defendants Green and Campbell from that complaint and, in fact, added a 42 U.S.C. § 1981 claim against all the named defendants. The claims against Green and Campbell remained alive throughout the summary judgment proceedings, which necessitated our ruling on that matter in our June 24, 1998, Entry, over a year after defendants placed Ms. Boyd on actual notice that her individual capacity claims lacked a legal basis. While Ms. Boyd paid lip-service to her client's inability to recover against individual supervisors when requesting leave to file an amended complaint, she never disavowed their status as Title VII defendants and she continued to serve them with discovery requests. In her April 24, 1998, Response to defendants' motion for summary judgment, she expressly advocated her Title VII claims against Noe's supervisors, entitling one section as follows: "Defendants Interstate Bakeries, Green and Campbell Also Are *Not* Entitled To Summary Judgment On Plaintiff's Title VII Claims Against Them ..." Pl.'s Resp.Summ.J. at 20 (emphasis in original). Therefore, the facts demonstrate that Ms. Boyd not only failed to conduct a reasonable pre-filing investigation into the legal support for the Title VII claims against

---

**3.** We acknowledge Ms. Boyd's commitment to paying taxes and her purported work ethic, but her aversions of patriotism are irrelevant for our purposes. Rule 11 still applies to "hardworking, taxpaying" lawyers who file and maintain frivolous and unreasonable claims against which other law-abiding citizens must defend.

Noe's supervisors, but that she also continued to advocate her position even after she learned that those claims were not warranted by existing law.

 Next, we agree with defendants that plaintiff's counsel advocated a frivolous and sanctionable claim against them based on 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts and ensures all persons the same benefit of rights "as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Defendants correctly note that after Ms. Boyd amended her complaint to include a section 1981 claim, she never alleged either the existence of an express or an implied contract or that Noe attempted to enforce such a contractual right. Nor did Ms. Boyd allege that Noe, who is caucasian, was retaliated against because of his race in violation of section 1981.

Moreover, Ms. Boyd's Response to IBC's motion for Rule 11 sanctions demonstrates her fundamental misunderstanding of the nature of a section 1981 claim, which rests on the existence of some type of contract, an element she has failed to analyze at any point during a dispute that is well into its third year. Ms. Boyd states in her Response that she pursued a section 1981 claim against Noe's individual supervisors because Noe believed that he was a victim of retaliation. Yet, this "explanation" simply muddies the waters further since Ms. Boyd never alludes to the enforcement of any purported contract between Noe and his individual supervisors. While it is not unusual for a section 1981 claim to accompany a Title VII claim, the facts of this particular case reveal that Ms. Boyd utterly failed to investigate the factual or legal basis for a section 1981 claim or to elucidate her theory when the defendants moved for summary judgment. On the contrary, Ms. Boyd completely ignored defendants' motion for summary judgment on the section 1981 claim, failing to muster any response whatsoever. The record before us reveals that the combination of the section 1981 claim itself and Ms. Boyd's management of it embodies the degree of frivolousness that Rule 11 is designed to deter. Ms. Boyd amended her complaint to include a section 1981 claim that she clearly had failed to investigate or nurture past the line of reasonableness, a decision that forced the defendants to waste time and resources in defending a claim that Ms. Boyd later abandoned without further development. Under these circumstances, Rule 11 applies with full force.

 Finally, despite Ms. Boyd's treatment of the individual capacity and section 1981 claims, we do not find that the facts of this case warrant sanctioning Ms. Boyd for pursuing Interstate Bakeries as a defendant in this matter. The defendants correctly note that they claimed in their answers to Noe's original and amended complaints that Interstate Bakeries was not Noe's employer. However, Ms. Boyd was entitled to investigate the relationship between Interstate Bakeries and its subsidiary, defendant IBC, and determine whether Interstate Bakeries sufficiently participated in employment actions regarding IBC's employees. And investigate she did. Plaintiff's Response to defendants' motion for summary judgment is ripe with background information regarding the evolution of Interstate Bakeries as a corporate entity, and Ms. Boyd purportedly even located a passage in Interstate Bakeries' and IBC's SEC reports indicating that Interstate Bakeries provided centralized support for human resources. *See* Pl.'s Resp.Summ.J. at 13–20. As it turns out, defendants were correct as a matter of law that Interstate Bakeries and IBC did not constitute a "single employer" or an "integrated enterprise" for purposes of Title VII liability, and their evidence in support of that assertion (an affidavit from IBC's Human Resources Manager) carried the day. Defendants rightly prevailed at the summary judgment stage as a result. But that victory is a far cry from finding that Ms. Boyd acted unreasonably in disputing the defendants' evidence and suggesting that Interstate Bakeries could have exercised sufficient control over IBC's operations to sustain Title VII liability. *See Khan v. Gallitano,* 180 F.3d 829, 837 (7th Cir.1999) ("There is a significant difference between making a weak argument with little chance of success … and making a frivolous argument with no chance of success."). Ms. Boyd and her client lost

once on this claim, and we find no grounds to impose a second loss where Ms. Boyd advocated a plausible legal position that ultimately failed. Based upon our familiarity with the record, we find that Ms. Boyd's naming of Interstate Bakeries as a defendant does not warrant Rule 11 sanctions.[4]

The defendants request that we award them reasonable attorneys' fees and expenses incurred from defending plaintiff's two sanctionable claims, which Rule 11 so authorizes to achieve its objective of deterring baseless filings. *See* Fed.R.Civ.P. 11(c)(1)(A) & (c)(2). We have reviewed defendants' cost declarations and affidavits, including defense counsel's hourly rates (ranging from $100 to $135 per hour), and find them reasonable under the circumstances ($3,800 in attorneys' fees and expenses in defending the section 1981 claims and $2,600 in attorneys' fees and expenses in defending the individual capacity claims against Green and Campbell). Moreover, Ms. Boyd fails to suggest that she and her firm are unable to pay the sanction amounts requested by defendants, a burden that is hers to carry. *See Anderson*, 111 F.3d at 502. We conclude that the total of these two sums, $6,400, is warranted to deter repetition of such conduct by plaintiff's counsel and to deter like conduct by counsel similarly situated. *See Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 645 (7th Cir.1992) ("Decisions concerning the award of attorney's fees as a Rule 11 sanction are better left to the discretion of the district court who had a bird's eye view of the actual positions taken by the litigants.") (internal quotations and citations omitted). We add without excessive elaboration that the advocacy and case management by plaintiff's counsel have been persistently dilatory throughout the course of these proceedings, which included a trial on the merits that resulted in a directed verdict in defendants' favor.[5] In the end, we trust that the sanction amount we have assessed provides the essential level of deterrence to prevent future failures of this type.

■ In addition to reasonable attorneys' fees and expenses, we find that a non-monetary sanction is particularly appropriate under these circumstances. This is not the first time (or the first Title VII case for that matter) that Ms. Boyd's advocacy has reached sanctionable levels, a reality that most detrimentally has affected the unfortunate and likely uninformed clients who have retained her services on those occasions. In an effort to deter and prevent such professional lapses in the future, we will require attorney Nathaniel Lee, partner at the law firm that employs associate Boyd, to enter his appearance and serve as collaborative co-counsel on all future Title VII or other employment discrimination cases that Ms. Boyd files and/or litigates in the Southern District of Indiana. This sanction requires Ms. Boyd and Mr. Lee to appear jointly before the Court during trial and pre-trial conferences, until relieved of this obligation by further order of the Court. We hope that this sanction will succeed where others have failed,[6]

---

4. Even if we found Ms. Boyd sanctionable on this claim, we would not increase the sanction amount beyond the present assessment. Given Ms. Boyd's level of advocacy of this claim compared to the two others we have discussed, an additional sanction would serve no incremental deterrent purpose in our view.

5. For example, we have ordered Ms. Boyd to pay defendants' costs for various matters on two previous occasions during the course of these proceedings alone. On September 17, 1998, we ordered Ms. Boyd to bear all of defendants' costs ($395.00), including attorneys' fees, relating to defendants' motion to strike plaintiff's affidavits, which failed to comply with the bare minimum requirements of 28 U.S.C. § 1746. Approximately one year earlier, on October 17, 1997, we had imposed sanctions upon Ms. Boyd for failing to respond to our show cause order requiring Ms. Boyd to explain why we should not impose

monetary sanctions upon her for failing to comply with deadlines specified in the Case Management Plan. As a final representative, albeit somewhat unusual, example of Ms. Boyd's dilatory approach to this lawsuit, Magistrate Judge Shields sua sponte issued an Entry reprimanding Ms. Boyd for gaining access to the courthouse after hours (on two or more occasions) and tendering non-emergency and late filings to judicial officers who "happened to be in residence." September 4, 1998, Entry. Judge Shields appropriately observed, "[t]he fact that the plaintiff may on at least one of these occasions have allowed a filing deadline to pass without having met it in the normal course, in no way warrants or justifies this intrusion." *Id.*

6. In a separate case involving some of the same lawyers retained in this action, *Sanders v. Continental Baking Company*, IP95–C–0840–B/S, we

for Ms. Boyd's repeated failures and willful refusals to follow court directives impose unwarranted burdens on the parties, the litigants and this Court. The only lesson learned through Ms. Boyd's approach to this case involves the harsh contours of Rule 11.

It is so ORDERED.

granted defendant's motion for sanctions against Ms. Boyd. On February 12, 1998, we sanctioned Ms. Boyd by requiring that she attend continuing legal education courses that pertained to Title VII litigation. Those courses apparently have not achieved their desired effect. Likewise, Judge Young dismissed a similar race discrimination case brought against IBC by plaintiffs who retained Ms. Boyd as counsel. *See Allen, et al. v. Interstate Brands Corp., Interstate Bakeries Corp.,* IP96–1285 C Y/S. Judge Young cited Ms. Boyd's "willful and bad faith pattern of disregarding discovery orders" as "one strong factor" for dismissing plaintiffs' action. Judge Young also ordered Ms. Boyd to provide a copy of his decision to all of the individual plaintiffs.